# AFFIDAVIT OF
# STEPHEN MALFITANO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

                     Plaintiffs,

           - against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No. 07-9617
(WAC) (LMS)**

**AFFIDAVIT OF
STEPHEN MALFITANO**

STATE OF NEW YORK    )
                    )   ss.:
COUNTY OF WESTCHESTER )

      STEPHEN MALFITANO, being duly sworn, deposes and says:

      1.      I am the former Supervisor/Mayor of the Town/Village of Harrison. I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint and/or for summary judgment.

      2.      Although I am named as an individual defendant in this case, I have little knowledge of the workings of the communications system of the Town of Harrison Police Department. More particularly, I had no knowledge that there was any possibility, as alleged in the complaint, that conversations had in the front desk area by individuals not a party to a telephone conversation could be recorded.

3.    I had no personal involvement with the installation or maintenance of the communications system of the Harrison Police Department. The first time I learned about an apparent malfunction in the system was after I was served with the complaint in this matter. Moreover, it is my understanding that shortly after the malfunction was brought to the attention of the Police Department it was corrected.

4.    At no time did I ever authorize anyone to record or listen to recordings of any conversations had by anyone in the front desk area of police headquarters. At no time did I record or listen to any recordings of any conversations had by anyone in the front desk area at Department headquarters. Indeed, I have no idea if any such recordings ever did or do exist. As noted, I am largely unfamiliar with the recording system as a whole.

5.    In light of the foregoing, the Defendants' motion to dismiss the complaint and/or for summary judgment should be granted.

Stephen Malfitano

Sworn to before me this
24th day of January, 2008

Notary Public

FRANK P. ALLEGRETTI
Notary Public, State of New York
No. 4994495
Qualified in Westchester County
Commission Expires April 6, 20__

2

59036.1 1/22/2008

# AFFIDAVIT OF
# JOSEPH CANNELLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

                  Plaintiffs,

          - against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No. 07-9617
(WAC) (LMS)**

**AFFIDAVIT OF
JOSEPH CANNELLA**

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF WESTCHESTER )

      JOSEPH CANNELLA, being duly sworn, deposes and says:

    1.    I am a trustee of the Town/Village of Harrison. I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint and/or for summary judgment.

    2.    Although I am named as an individual defendant in this case, I have little knowledge of the workings of the communications system of the Town of Harrison Police Department. More particularly, I had no knowledge that there was any possibility, as alleged in the complaint, that conversations had in the front desk area by individuals not a party to a telephone conversation could be recorded.

3.    I had no personal involvement with the installation or maintenance of the communications system of the Harrison Police Department. The first time I learned about an apparent malfunction in the system was after I was served with the complaint in this matter. Moreover, it is my understanding that shortly after the malfunction was brought to the attention of the Police Department it was corrected.

4.    At no time did I ever authorize anyone to record or listen to recordings of any conversations had by anyone in the front desk area of police headquarters. At no time did I record or listen to any recordings of any conversations had by anyone in the front desk area at Department headquarters. Indeed, I have no idea if any such recordings ever did or do exist. As noted, I am largely unfamiliar with the recording system as a whole.

5.    In light of the foregoing, the Defendants' motion to dismiss the complaint and/or for summary judgment should be granted.

_____
Joseph Cannella

Sworn to before me this
21th day of January, 2008

_____
Notary Public

FRANK P. ALLEGRETTI
Notary Public, State of New York
No. 4994486
Qualified in Westchester County
Commission Expires April 6, 20010

2                                                    59042.1 1/22/2008

# AFFIDAVIT OF
# THOMAS SCAPPATICCI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

                    Plaintiffs,

          - against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**Civil Action No. 07-9617
(WAC) (LMS)**

**AFFIDAVIT OF
THOMAS SCAPPATICCI**

STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF WESTCHESTER )

     THOMAS SCAPPATICCI, being duly sworn, deposes and says:

     1.     I am a trustee of the Town/Village of Harrison. I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint and/or for summary judgment.

     2.     Although I am named as an individual defendant in this case, I have little knowledge of the workings of the communications system of the Town of Harrison Police Department. More particularly, I had no knowledge that there was any possibility, as alleged in the complaint, that conversations had in the front desk area by individuals not a party to a telephone conversation could be recorded.

3.    I had no personal involvement with the installation or maintenance of the communications system of the Harrison Police Department. The first time I learned about an apparent malfunction in the system was after I was served with the complaint in this matter. Moreover, it is my understanding that shortly after the malfunction was brought to the attention of the Police Department it was corrected.

4.    At no time did I ever authorize anyone to record or listen to recordings of any conversations had by anyone in the front desk area of police headquarters. At no time did I record or listen to any recordings of any conversations had by anyone in the front desk area at Department headquarters. Indeed, I have no idea if any such recordings ever did or do exist. As noted, I am largely unfamiliar with the recording system as a whole.

5.    In light of the foregoing, the Defendants' motion to dismiss the complaint and/or for summary judgment should be granted.

Thomas Scappaticci

Sworn to before me this
___ day of January, 2008

Notary Public

FRANK P. ALLEGRETTI
Notary Public, State of New York
No. 4894485
Qualified in Westchester County
Commission Expires April 8, 20__

2

59043.1 1/22/2008

# AFFIDAVIT OF
# DOMINICK PASCALE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

                   Plaintiffs,

          - against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No. 07-9617
(WAC) (LMS)**

**AFFIDAVIT OF
DOMINICK PASCALE**

STATE OF NEW YORK     )
                             : ss.
COUNTY OF WESTCHESTER )

      DOMINICK PASCALE, being duly sworn, deposes and says:

      1.    I am a Sergeant in the Town/Village of Harrison Police Department ("Department"), and have been employed in that position since 1997. In total, I have been employed as a police officer by the Town for over 22 years. I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint and/or for summary judgment.

      2.    As part of my job, I am responsible for the communications system in the Department. While I do not have any advanced degrees in Information Technology ("I.T."), I assist the Department with any computer, communications, or similar kinds of technological issues.

3.      As set forth below, there was never any unlawful recording of any conversation had by anyone.  Unbeknownst to me, an electronic adapter (*i.e.*, the Dynametric device described below) that is prominently displayed on the front desk at police headquarters and is used to assist the recording of incoming and outgoing telephone calls to the general number of the Harrison Police Department, was somehow briefly activated when individuals spoke *very* loud or banged *very* hard on the front desk.  After being advised of the problem, it was corrected.  I never intentionally altered the Department's communications system to intercept any conversations had by individuals at the front desk, and I am not aware of anyone, including Chief of Police David Hall, ever intentionally altering the communications system in such a manner.  Put simply, there was never any intention whatsoever to intercept any conversation had by anyone at the front desk.

## THE FRONT DESK

4.      Located immediately inside the main entry to police headquarters, the front desk of the Department essentially serves as the "reception desk" for individuals who come to police headquarters.  Anyone from the public can enter the reception area in front of the front desk, i.e., individuals reporting crimes, looking for directions, obtaining records, etc.  A picture of the front desk taken from the vantage point of the main entry to police headquarters is annexed hereto as Exhibit "1".  A picture of the main entry to police headquarters taken from the vantage point of the front desk is annexed hereto as Exhibit "2".

5.      Although there is a glass partition that partially separates the officer side of the front desk from the visitor side, there is a large opening in the glass that *cannot be closed*.  This opening in the glass partition is not like a window that can be open and shut by the officers.  Rather, this is a permanent opening that cannot be physically shut by anyone.  Because this

2

opening cannot be closed, the officer side can never be closed-off to the visitor side of the front desk. A picture of the glass partition and opening is annexed hereto as Exhibit "3".

6.      A plexiglass partition that can be opened and closed also separates the officer side of the front desk area from the adjacent holding cell. Whenever there is an individual being held in the cell, the partition remains open so that the officer(s) assigned to the front desk can keep a constant watch over the cell and hear anything being said or done by the individual within. When the partition is open, someone in the holding cell can also hear things being said and done by officers behind the front desk. This plexiglass partition is not sound-proof, so even if the partition is closed, it is possible that things said on the officer side of the front desk can be overheard by anyone inside the holding cell. A picture of this plexiglass partition is annexed hereto as Exhibit "4".

7.      The officer side of the front desk is equipped with two 911 call stations ("Desk Officer Station" and "Assistant Desk Officer Station"). *See* Exhibit "5" annexed hereto. The front desk is usually staffed with two officers (the "Desk Officer" and the "Assistant Desk Officer") with one officer assigned to work each call station. On some occasions, one officer will work both call stations.

8.      Even though a particular officer is not the assigned Desk Officer or Assistant Desk Officer at a given time, he/she still has unfettered access to enter the officer side of the front desk area at any time. All members of the Department – including sworn officers, administrative staff, and custodians/cleaning personnel – have access to the officer side of the front desk. Personnel who enter the officer side area routinely enter this area for a number of reasons.

3

9.     For example, after you walk through the door there is a bulletin board usually containing a number of postings. On your left are mailboxes for all of the sergeants in the Department. Personnel also enter the areas to use the computer station, pick-up copies of police reports and summonses, obtain keys to patrol cars, and retrieve their mail. Officers also routinely walk through this area on their way into and out of the Sergeants' and Lieutenant's areas which are adjacent to the officer side of the front desk. Pictures of the desk area showing the key locker, computer station, mailboxes, bulletin board, and entry to the Sergeant's and Lieutenant's room are annexed hereto as Exhibit "6".

10.     In addition to members of the Department, other individuals not associated with the Department itself periodically gain access to the officer side of the front desk. For example, if there was a problem with one of the front desk computers that required the attention of an outside repair technician, that technician would be free to enter the officer side of the front desk to make whatever repairs to the computer may be necessary.

11.     Because of the complete accessibility of the officer side of the front desk by others, I do not have any expectation that any conversation I may have while I am standing at the officer side of the front desk area will is a private conversation. In addition, because of the possibility that anything I say while on the officer side of the front desk may be overheard by someone on the visitor side and/or someone in the holding cell, I do not have any expectation that things I say while on the officer side are private. Simply put, there is no expectation of privacy at the front desk area of police headquarters.

## THE DEPARTMENT'S COMMUNICATION SYSTEM

12.     The Department's overall communications system is currently comprised of two separate and distinct parts: (1) a digital voice recording system; and (2) a voice Dictaphone

4

communications recording system ("Dictaphone"). The digital voice recording system and the Dictaphone are two completely different systems that have absolutely no interaction or relation to one another.

## A.    The Digital Voice Recording System

13.    The Department's digital voice recording system is a computerized voice recording system that records 911 calls, non-emergency calls made to and from the Department's general phone number, and all transmissions made over the police radio and the Department's Nextel handheld devices. All recordings made by this system are temporarily stored (for approximately one month) in a computerized recordings database before they are transferred to backup CDs/DVDs for permanent storage. Authorized individuals can then, at future points in time, search this database for and listen to specific calls previously received on specific dates and times. For example, if, on January 1, 2008, an officer needed to locate a call that came into the Department on December 15, 2007 at 12:01 a.m., that officer would be able to do so by logging-on to one of the Department's computers, signing-in to the recordings database, and entering the search criteria (*i.e.*, December 15, 2007 and 12:01 a.m.). The computer would then find the December 15, 2007 call, and the officer would be able to listen to it on January 1, 2008. The malfunction described below had nothing to do with this system.

## B.    The Dictaphone

14.    The Dictaphone is a machine located next to the front desk of the Department that temporarily records all incoming 911 calls and non-emergency calls made to and from the Department's general phone number. The Dictaphone is redundant to the digital voice recording system, but, as described below, it allows an officer to listen to a 911 call immediately after that

5

call comes in without the officer having to take the time to log-on to the computer, sign-in to and search the recordings database to find the call.

15.    The Dictaphone works as follows:

i.    When a call comes into the Department, the Desk Officer answers the call by lifting up the handset and pressing a button on the Dictaphone machine. By doing this, the call gets picked-up and the Dictaphone begins recording the phone conversation. A picture of the Dictaphone installed at the Desk Officer Station is annexed hereto as Exhibit "7".

ii.    When the call is complete and the caller hangs up his/her end of the line, the officer hang-ups the headset and must manually "release" the phone call by pressing the "release" button on the machine. (A picture showing the "release" button is annexed hereto as Exhibit "8"). By doing this, the officer's end of the line hangs up and the Dictaphone stops recording.

iii.    After a call is complete, that call can be temporarily be replayed by an officer physically present at the actual Dictaphone machine. In order to reply the call, the officer must press the "recall" button located on the front of the Dictaphone. (A picture showing the "recall" button is annexed hereto as Exhibit "9"). This is the only way in which a Dictaphone recording can be replayed. Dictaphone recordings cannot be replayed from anywhere else in the Department or any other location. Also, recordings can only be temporarily replayed because the Dictaphone is only capable of recording approximately 8-10 hours of time. Once this record time is filled, the Dictaphone will simply record over what has been previously recorded.

6

iv. *At all times while the Dictaphone is recording, an orange light on the front of the machine is lit that indicates it is recording. This light is not lit at any time the machine is not recording.* A picture showing the illuminated orange record light is annexed hereto as Exhibit "10".

v. Anything recorded by the Dictaphone is stored on a microchip within the Dictaphone machine itself. The Dictaphone itself is not networked to a server or computer in the Department that backs-up what is recorded onto the microchip, and no back-up CDs/DVDs or cassette tapes are made of what is recorded by the Dictaphone. Therefore, once any given conversation is recorded over, that conversation is "gone for good" and cannot be recovered by resort to a back-up tape or file.

16.    When properly activated in the manner described above, the Dictaphone records both 911 calls and non-emergency calls received on the Department's general telephone number. However, because calls made to/from the general telephone number (as opposed to 911 calls) are transmitted in a "digital signal" format and the Dictaphone machine records in an "analog signal" format, a device called a "Dynametric" is required to convert the non-emergency calls into an "analog signal" format that the Dictaphone can record. Essentially, the Dynametric is a phone jack located on the wall next to the non-emergency phone, which connects that phone with the Dictaphone and electronically "translates" the non-emergency calls into an electronic "language" the Dictaphone can understand and record. Because 911 calls transmit in a format that is already compatible with the Dictaphone, the Dynametric has nothing to do with those calls. A picture of the Dynametric is annexed hereto as Exhibit "11".

7

17.    Approximately four years ago, the Department underwent a communications system upgrade and replaced its telephone tape-recording system, a system that recorded telephone calls on cassette tapes, with a new digital computerized recording system that recorded and stored telephone calls on a searchable computerized database and back-up CDs/DVDs (*i.e.*, the digital voice recording system).    However, as a convenience to the officers in the Department, the Dictaphone, which was associated with the old tape-recording system, was left in place following the upgrade.

18.    The Dictaphone was left in place because it enables officers to quickly and easily replay telephone calls (*i.e.*, by pressing the "recall" button on the face of the Dictaphone) without having to go through the process of logging-on to a computer, signing-in to and searching the digital recording database.    Essentially, the Dictaphone provided an easy way for the Desk Officer (and Assistant Desk Officer) to immediately review a 911 call and non-emergency calls to ensure that any information he/she transmits to the officers responding to the call is accurate and consistent with what was reported to him/her.    For example, if the Desk Officer needed to play back a 911 call that just came in to verify that he/she wrote down the correct address, the officer could do so without delay by pressing simply pressing the recall button and listening to the call. Without the Dictaphone, the officer would have to take precious time to log-on to a computer, sign-in to the recordings database, and search for the call before he/she could listen to it.

19.    Because there is a Dictaphone set up at the Desk Officer Station and Assistant Desk Officer Station, a Dynametric device was also set up at both call stations.    However, a number of years ago, the Dynametric device at the Assistant Desk Officer Station was vandalized and "ripped out" of the wall, rendering it inoperable.    As a result, non-emergency

8

calls to the Department's general number cannot be recorded by the Dictaphone at the Assistant

Desk Officer Station.    Aside from this difference between the Desk Officer Station and the

Assistant Desk Officer Station, the two call stations are in all other respects identical.    The

Dynametric device that malfunctioned as described below is the Dynametric installed at the Desk

Officer Station.

## THE MALFUNCTION OF THE DICTAPHONE

20.    On October 14, 2007 at about 10:30 p.m., I received a voicemail message at my

home from Sergeant Danny Grant informing me that the Dictaphone was malfunctioning.

21.    On October 15, 2007 at approximately 8:00 a.m., I responded to the front desk

area of the Department to speak with Sergeant Grant about the malfunction.    Sergeant Grant

advised me that the malfunction involved the Dictaphone at the Desk Officer Station, and that

instead of the Dictaphone only recording after the handset had been picked up off of the receiver,

the Dictaphone was recording without the handset being lifted.    I tried to recreate this

malfunction, but could not.    I advised Sergeant Grant to instruct all officers that after hanging-up

a 911 call, they must "release" that phone call by pressing the "release" button on the Dictaphone

because it was possible the Dictaphone might continue to record if that was not done. Of course,

if that happened and the Dictaphone was recording, the orange light on the front of the machine

would clearly be illuminated.

22.    Later on that day, Detective Michael Walther, currently President of the PBA,

spoke to me about the malfunction.    I asked him if he could show me what was happening to

cause the malfunction to occur.    Detective Walther and I went to the officer side of the front desk

and I again tried to recreate the malfunction.    We tried recreating the malfunction in several ways

without success, until Detective Walther said that if you banged on the desk or talked loudly it

58714.1 1/23/2008

might activate the Dictaphone. I then tried doing just that several times, each time hitting the desk more firmly and talking louder, until I was shouting and hitting the desk as hard as I could. The only way I could get the malfunction to occur was to literally slam my fist down on desk next to phone, but even at that, the Dictaphone would only activate for a few seconds before it would stop recording. Specifically, what we found is that extreme banging on the desk in close proximity to the non-emergency phone and Dynametric was causing the Dictaphone to momentarily activate (with the orange light illuminated to indicate that it was recording) even though no phone call had been received, and that the Dynametric was the source of the malfunction. Notably, it was only the Dictaphone that activated briefly as a result of the malfunction; the digital voice recording system did *not* activate or record anything no matter how hard we banged on the desk.

23.     I advised Detective Walther that the Dictaphone was only a convenient "back up" for the desk officer to the digital voice recording system that had been installed, and that if the Dictaphone was an issue, he should let me know. I also showed him that when the Dictaphone is recording, the orange record light on the front of the machine is illuminated. Detective Walther advised me that he was satisfied with our findings and that he would pass them along to the members of the Department. Had Detective Walther made any indication that he was dissatisfied with our findings or that he was still concerned about the malfunction, I would have disconnected the Dynametric at that time.

## LETTER FROM THE PBA

24.     A few days later, I was surprised to learn that the Harrison PBA had sent a letter to Chief Hall complaining about the malfunction. *See* Exhibit "12" annexed hereto. Immediately after learning of this letter, I disconnected the Dynametric from the Dictaphone since the

10

Dynametric was the device that was malfunctioning. I did this by unplugging the general telephone line from the Dynametric and disconnecting its power supply. Detective Walther witnessed me disconnect the Dynametric.

25.    Because the Dynametric has been disconnected, it is no longer possible for non-911 calls made to/from the Department's general phone number to be recorded by the Dictaphone at either call station. As discussed above, the Dynametric at the Assistant Desk Officer Station has been inoperable for many years, and now that the Dynametric at the Desk Officer Station is disconnected it too cannot record any calls to/from the general number. Should an officer need to listen to a non-911 call, that officer must now take the time to log-on to a Department computer, sign-in to the recordings database, and search for the call before it can be listened to.

### THERE WAS NO UNLAWFUL INTERCEPTION OF ANY CONVERSATIONS

26.    At no time did I ever intentionally set up any system to record the private conversations of police offices or the general public. The only recordings I was aware of prior to speaking with Sergeant Grant and Detective Walther on October 15, 2007, were those made by the digital voice recording system, and the temporary recordings the Dictaphone made of 911 calls and non-emergency calls made to the Department's general number. The recording of these phone calls has been common knowledge in the Department and is done routinely in other police departments. Not until Detective Walther showed me how the malfunction was occurring was I even aware that the Dictaphone could activate without any phone call coming-in. As noted, shortly after this malfunction was brought to my attention, the Dynametric was disconnected in the presence of Detective Walther and the problem caused by the malfunctioning device therefore disappeared.

11

27.    At no time did I ever listen to any conversations of police officers or members of the general public that may have been recorded by the Dictaphone as a result of the malfunction. As stated, at no time prior to speaking with Sergeant Grant and Detective Walther on October 15, 2007 was I even aware that any conversations were being recorded by the Dictaphone other than those had during the 911 calls and non-emergency calls made to the Department's general number.

28.    In light of the foregoing, the Defendants' motion to dismiss the complaint and/or for summary judgment should be granted.

Dominick Pascale

Sworn to before me this
23 day of January, 2008

Notary Public

DONNA M. PELLICCI
Notary Public. State of New York
No. 01PE6133617
Qualified in Westchester County
Term Expires September 19, 2009

12

# AFFIDAVIT OF
# DAVID HALL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

                     Plaintiffs,

            - against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No. 07-9617
(WAC) (LMS)**

**AFFIDAVIT OF
DAVID HALL**

STATE OF NEW YORK    )
                       )   ss.:
COUNTY OF WESTCHESTER )

      DAVID HALL, being duly sworn, deposes and says:

      1.     I am the Chief of Police for the Town/Village of Harrison Police Department ("Department"), and have held that position since 1997. I have been employed as a police officer by the Department for over 34 years. I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint and/or for summary judgment.

      2.     On or about October 22, 2007, I received a letter from Gregory Kuczinski, counsel for the Harrison PBA stating he had "been informed by several members of the PBA that the 911 recording system in and around the front desk of headquarters is recording conversations

of both the police officers and anyone else that might be in the area, i.e. the general public." *See* Exhibit 12 annexed hereto.

3.     A few days before receiving this letter, I had been out of town in New Orleans, Louisiana. While I was away, I received a telephone call from Captain Anthony Marraccini to inform me that there was an apparent malfunction with the Department's communications system. Captain Marraccini also informed me that the matter had been investigated and that it was considered by all parties involved to be a "non-issue" based on the investigation.

4.     After receiving the letter from Mr. Kuczinski, I contacted Sergeant Dominick Pascale, who is the officer who handles the Department's communications system, and asked him if he was aware of this matter. Sergeant Pascale reported to me that several days earlier, he had learned from another police officer that there was an apparent malfunction with a device used as part of the communications system called the Dictaphone. Sergeant Pascale stated that he had learned that the system might turn on and record a very loud conversation if someone were to bang extremely hard on the front desk at police headquarters. I understand that it took several attempts for Sergeant Pascale to get the malfunction to occur and that once the machine turned on it would only turn off within a matter of seconds unless someone was speaking in a very loud voice. Sergeant Pascale also informed me that he had already remedied the matter by disconnected the malfunctioning device from the Dictaphone.

5.     As a result of my conversation with Sergeant Pacale, I wrote back to Mr. Kuczinski and informed him of the apparent malfunction as follows:

> In regard to your letter of October 19, 2007, I have looked into the matter concerning the P.B.A.'s complaint about the 911 phone system's ability to record conversations behind the front desk and found that is appears to have been a malfunction in the system.
>
> The unit gave the officers the ability to replay 911 calls in case and address or house number was missed. It only recorded at the desk

2

58713.1 1/24/2008

area and no where else.  Sgt. Pascale informed me that the basic unit has been disconnected.  To retrieve a call now, the officers will have to use the computer software.

I hope I have addressed the concerns related to this matter.

*See* Exhibit 13 annexed hereto.

6.    As of that time, I considered the matter to be closed to the satisfaction of both the Department and Harrison PBA.  I subsequently learned, however, that the Plaintiffs were making a federal case out of this malfunction when a lawsuit was served on the Village in November of 2007.

7.    I never instructed anyone to record the conversations had by anyone in the front desk area of Department headquarters.  I was not aware that any such conversations were allegedly being recorded until I received the letter from Mr. Kuczinski.

8.    I was also not aware of the apparent malfunction until Captain Marraccini called me to inform me of the situation while I was in New Orleans.

9.    At no time did I ever intentionally alter the Department's communications system to intercept any conversations had by anyone in the front desk area of Department headquarters, and I am not aware of anyone, including Sergeant Pascale, ever intentionally altering the communications system in such a manner.

10.    At no time did I ever listen to any recordings of any conversations had by anyone in the front desk area at Department headquarters.  Indeed, I have no idea if any such recordings ever did or do exist.  In fact, I am largely unfamiliar with the Department's communications system as a whole.

58713.1 1/24/2008

11.    In light of the foregoing, Defendants' motion to dismiss the complaint and/or for summary judgment should be granted.

_____
David Hall

Sworn to before me this
24 day of January, 2008

_____
Notary Public

DONNA M. PELLICCI
Notary Public, State of New York
No. 01PE6133617
Qualified in Westchester County
Term Expires September 19, 2009

4

58713.1 1/24/2008