UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

Civil Action No. 07-9617
(WAC) (LMS)

Plaintiffs,

- against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND/OR FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTS ......................................................................................................................3

STANDARD OF REVIEW ........................................................................................5

ARGUMENT............................................................................................................8

    POINT I ...........................................................................................................8

        The Court Should Strike Paragraph 14 (iii) Of The Complaint...............8

    POINT II ..........................................................................................................8

        The Claims Against Individual Defendants Malfitano, Cannella, And Scappaticci Must Be Dismissed Because Plaintiffs Have Failed To Allege These Defendants Were Personally Involved In Any Constitutional Or Statutory Deprivation...............................................................................8

    POINT III.........................................................................................................10

        The Plaintiffs Lack Standing ...............................................................10

    POINT IV.........................................................................................................12

        Plaintiffs' Lack Of Any Expectation Of Privacy Defeats Their Fourth Amendment And ECPA Claims ...........................................................12

        A.     Fourth Amendment Standard.....................................................13

        B.     ECPA Standard .........................................................................14

        C.     Plaintiffs Have No Reasonable Expectation Of Privacy In The Front Desk Area Of Police Headquarters ............................................15

    POINT V     .........................................................................................19

        The ECPA Claims May Not Be Asserted Against A Municipality.......19

    POINT VI.........................................................................................................20

        The Claims Against Defendants Hall And Pascale Should Be Dismissed ...........20

i

A.   Hall And Pascale Are Protected By The Doctrine Of
Qualified Immunity................................................................................20

B.   There Was No Intentional Interception Of Plaintiffs' Conversations .......23

POINT VII .........................................................................................................24

Plaintiffs' Failure To Allege An Unconstitutional Custom Or Policy Warrants
Dismissal Of Their  Claims Against The Town/Village.........................................24

CONCLUSION..........................................................................................................25

58704.1 1/25/2008

## PRELIMINARY STATEMENT

This is yet another frivolous case in a series of frivolous cases filed by the Plaintiffs against the Town/Village of Harrison ("Town") and several individual defendants. [1]    A malfunction occurs with the Harrison Police Department ("Department") telephone system and despite being informed of same, Plaintiffs have once again rushed to Court accusing the Chief of Police and others of constitutional and criminal violations when none have occurred.

The complaint makes *knowingly false accusations* against Chief of Police David Hall. It alleges that he engaged in a "felonious forgery of a $2,500 check . . ." (Complaint ¶ 14 (iii)). This scandalous allegation was stricken from the complaint pursuant to a stipulation reached before the Court on January 4, 2008. Nevertheless, this allegation demonstrates Plaintiffs' apparent willingness to say anything no matter how false or ridiculous.

The complaint is defective and warrants dismissal for several different reasons. First, the complaint accuses three of the five members of the Town's Board of Trustees of constitutional and statutory violations relating to their alleged recording of and listening to telephone conversations. However, these individuals had absolutely no knowledge of, or involvement in any aspect of the telephone system at issue in this case. In fact, aside from merely naming them in the caption, the complaint is noticeably silent as to what defendants Malfitano, Cannella, and Scappaticci did to violate any of Plaintiffs' constitutional or statutory rights. In light of the Plaintiffs' complete failure to plead any involvement whatsoever by these individual defendants, the complaint should be dismissed against them.

Second, the complaint fails to identify what conversations were allegedly recorded and/or listened to by the Defendants. Nowhere in the complaint is a single conversation described, and

---

[1] Plaintiff Tancredi recently withdrew his claim for false arrest and malicious prosecution after the Town and individual Defendants moved to dismiss his complaint. *See Tancredi v. Hall, Mussolino, Lucas et al.*, 07 Civ. 7485 (WCC).

not even one Plaintiff is identified as having any specific conversation recorded. Under these circumstances, the Plaintiffs lack standing to bring this lawsuit. The complaint must therefore be dismissed.

Third, all of the conversations allegedly recorded took place in the front desk area of the Harrison Police Department headquarters where there is no reasonable expectation of privacy. Under well settled law, Plaintiffs alleging that their oral communications were unlawfully intercepted in violation of the Fourth Amendment or the Omnibus Crime Control and Safe Streets Act ("ECPA") must have had an expectation of privacy where the alleged interception took place. The absence of any such expectation defeats all of Plaintiffs' constitutional *and* statutory claims.

Fourth, a number of courts have concluded that the ECPA does not even apply to municipalities. As such, the complaint as against the Town should be dismissed.

Fifth, with regard to individual Defendants Hall and Pascale, the complaint in wholly conclusory fashion, asserts that they altered the Department's 911 communications system. However, there is nothing in the complaint to suggest how or when the communications system was altered, or to otherwise provide any notice of the basis of such a claim. Other than merely assuming Defendants Hall and Pascale acted in such a manner, the complaint alleges absolutely no facts in support of these unfounded allegations. As set forth in the accompanying affidavits, at no time did either Hall or Pascale alter the communications system or unlawfully record or listen to any conversations. Moreover, as indicated by the letters referenced in the complaint, the alleged unlawful recordings – assuming any recording even exists – are nothing more than the unfortunate result of a malfunctioning adapter, which was disconnected after the malfunction was brought to the Department's attention.

2

Finally, the Town is named as a defendant. Yet, it is difficult to comprehend how any municipal policy has been alleged, as the complaint itself asserts that there was a *surreptitious alteration* of the telephone system. Thus, rather than allege a policy, the complaint alleges just the opposite, *i.e.*, that the lawful policy of the Town was improperly changed. This is, as a matter of law, insufficient to state a claim under 42 U.S.C. §1983.

Considering the foregoing, the complaint amounts to nothing more than a collection of wholly unfounded allegations brought to federal court as part of Plaintiffs' systematic filing of baseless claims against the Defendants. Unfortunately, Plaintiffs have yet again chosen to waste the valuable time and resources of this Court in their unjustified and selfish efforts to tarnish the reputations of the Harrison Police Department and its public servants.

## FACTS

The facts of this case are summarized below. A more detailed statement of the facts is set forth in the affidavits of Sergeant Dominick Pascale and Chief David Hall.

Like most modern police departments, the Harrison Police Department maintains a communication system that records both 911 calls and calls made to the Department's general phone number. The Department maintains two distinct methods of recording these incoming calls — a computer system and Dictaphone. (Pascale Aff. ¶ 12). The computer system records these calls onto a computerized database which is backed-up onto CDs/DVDs. Someone wishing to listen to a call from a week or two prior can do so by signing-on to a computer, logging-in to and searching the computerized database for the date and time of the call. (Pascale Aff. ¶ 13).

In addition to the computer system, 911 calls and calls to the Department's general number are also recorded by the Dictaphone. The Dictaphone is a completely separate machine that operates separate and apart from the computer system. In order for the call to be recorded

3

by the Dictaphone, the police officer lifts the handset and presses a button on the machine. Whenever the Dictaphone is recording, an orange light prominently displayed on the front of the machine is illuminated. When the call is complete, the officer presses a "release" button to stop the recording, and the orange light goes off. The Dictaphone holds approximately eight hours worth of calls in its memory. When the memory is full, all previously recorded calls are recorded over. Nothing recorded by the Dictaphone is backed-up in anyway. (Pascale Aff. ¶ 15).

The Dictaphone is a convenient way in which officers can replay a 911 call or other important call received on the Department's general number. All the officer has to do to replay the call is to press the "recall" button on the front of the machine, and the officer can instantly listen to the recorded call. This is important because it allows the officer to quickly replay the call to ensure that information (*e.g.*, an address) he/she transmits to the officers responding to the call is accurate. Without the Dictaphone, the officer would have to take precious time to search for the call on the computer system and possibly delay the transmission of critical information. *Id.*

According to the complaint, conversations between individuals at the front desk area of Department headquarters were being improperly recorded by the Dictaphone machine (but not the computer system). (*See* Complaint ¶ 12). As is described more fully in the Affidavit of Dominick Pascale (*see* Pascale Aff. ¶¶ 4-11), the front desk has two call stations each of which is regularly staffed with a desk officer. The front desk is also open to the main entrance of the Department, and any member of the general public can approach the officer sitting at the front desk for any number of reasons. In addition, all Department personnel can and do regularly enter the officer side of the front desk for a variety of reasons. Pictures of the front desk area are annexed to the affidavit of Dominick Pascale. (*See* Pascale Aff. Exhibits 1-11).

4

After being informed that conversations were possibly being recorded by the Dictaphone, on the morning of October 15, 2007, Sgt. Pascale investigated the matter but was unable to determine what was causing the alleged recordings to occur. Later in the day, however, Plaintiff Detective Michael Walther informed Sgt. Pascale that the Dictaphone was turning on by itself and when it did so, would record the voices in the front desk area. Sgt. Pascale and Det. Walther discovered, however, that the Dictaphone would only momentarily turn on if someone banged hard on the front desk near the Dynametric device (an electronic adaptor located on the front desk that converts the "analog signal" format of non-911 calls into a "digital signal" format recognized by the Dictaphone (Pascale Aff. ¶ 16)), and it would only record for a few seconds before turning off. (Pascale Aff. ¶ 21-23).

After this malfunction was discovered, Det. Walther told Sgt. Pascale that he was satisfied with their findings. (Pascale Aff. ¶ 23). Several days later, however, after the PBA sent a letter to Chief Hall inquiring about the matter, Sgt. Pascale disconnected the Dynametric device in the presence of Sgt. Walther. (Pascale Aff. ¶ 24). Because the Dynametric has been disconnected, non-911 calls cannot be recorded by the Dictaphone. Thereafter, Chief Hall wrote to the PBA informing it that the situation was caused by a malfunctioning device, and that the device had been disconnected. (Hall Affidavit ¶5, Ex. 13). This lawsuit followed.

## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007), the United States Supreme Court set forth a new standard governing Rule 12(b)(6) motions to dismiss. In *Twombly*, the Court "explicitly disavowed the oft-quoted statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) " 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007) (explaining

5

the implications of *Twombly* on "the standard for assessing the adequacy of pleadings"); *accord Ad Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591, *3 (S.D.N.Y. 2007) (Karas, J.). Ringing the death knell for *Conley*, the *Twombly* Court held that the "no set of facts" language "has earned its retirement" and "is best forgotten." *Twombly*, 127 S. Ct. at 1969.

In *Conley*'s place, the *Twombly* Court announced a new standard by which courts should adjudge the adequacy of pleadings. Now, to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. As the Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and the line "between the factually neutral and the factually suggestive...must be crossed to enter the realm of plausible liability." *Id.* at 1965, 1966 n. 5; *accord Ad Rendon Communications, Inc.*, 2007 WL 2962591 at *3; *Blanco v. Brogan,* 2007 U.S. Dist. Lexis 86890 (S.D.N.Y. 2007) (Brieant, J.) ("The Plaintiff must allege some facts that support the elements of the claim alleged, in order to defeat the motion [to dismiss]"). Thus, the new governing standard is one of "plausibility," not conclusory speculation. *Id.*

This new standard has been applied in employment discrimination cases. *See, e.g.,* *Blanco,* 2007 U.S. Dist. Lexis 86890 (Brieant, J.) (dismissing gender discrimination claims brought by police officer against municipal employer); *Reyes v. City Univ. of N.Y.*, 2007 WL 2186961, *5 (S.D.N.Y. 2007) (dismissing retaliation claim on a motion to dismiss in light of *Twombly* because Plaintiff "has not 'amplif[ied] his claim with some factual allegation in those contexts where some amplification is needed to render the claim plausible'"); *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9-10 (1st Cir. 2007) (affirming dismissal of wrongful demotion claim

6

where allegations in complaint were too speculative to draw inference of discrimination) *citing Twombly*.

In assessing the legal sufficiency of a claim, the Court may consider documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *See, e.g., Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991); *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) (courts "may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion"). The court may consider those facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Finally, if the court so desires, it may convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56 and afford all parties the opportunity to present supporting material. *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988); *see* Fed. R. Civ. P. 12(b).

58704.1 1/25/2008

## ARGUMENT

### POINT I

### THE COURT SHOULD STRIKE PARAGRAPH
### 14 (iii) OF THE COMPLAINT

At the January 4, 2008 conference before this Court, the parties stipulated that Paragraph

14 (iii) of the complaint would be stricken. This was approved by the Court in chambers.

### POINT II

### THE CLAIMS AGAINST INDIVIDUAL DEFENDANTS
### MALFITANO, CANNELLA, AND SCAPPATICCI MUST BE
### DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO
### ALLEGE THESE DEFENDANTS WERE PERSONALLY INVOLVED
### IN ANY CONSTITUTIONAL OR STATUTORY DEPRIVATION

Plaintiffs have named as defendants in this matter the former mayor and two sitting

members of the Town Board of Trustees. The fact that these individuals happen to be

Republican is not likely to have been a mere "coincidence." This notwithstanding, the complaint

contains no allegation that any of these three individuals did anything with regard to the alleged

taping of Plaintiffs' conversations. The complaint only alleges that these defendants knew of

unrelated criminal conduct by Hall, but never alleges that they knew or authorized the alleged

recording *in this case*. (*See* Complaint ¶¶ 14-16). Plaintiffs' failure to allege how these

individual defendants were involved in depriving Plaintiffs' of any federally protected rights

(constitutional or statutory) requires dismissal of the complaint as against them.

In order to state a viable claim under Section 1983, the complaint must allege the

"personal involvement of defendants in [the] alleged constitutional deprivations" *Colon v.*

*Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *accord Alfaro Motors, Inc. v. Ward*, 814 F.2d 883

(2d Cir. 1987) ("having failed to allege, as they must, that these defendants were directly and

personally responsible for the purported unlawful conduct, [plaintiffs'] complaint is fatally

defective"); *Blanco*, 2007 U.S. Dist. Lexis 86890 at *7 (dismissing complaint against individual

8

defendant because "Plaintiff alleges no factual support for these conclusory allegations" of "personal involvement"); *Mehrhoff v. William Floyd Union Free School Dist.*, 2005 WL 2077292, *5 (E.D.N.Y. 2005) (dismissing complaint because "[w]hile plaintiff names several individual Defendants in the Complaint, she fails to provide notice as to what specific actions were taken by each individual which led to a violation of her constitutional rights"); *Wallace v. Conroy*, 945 F. Supp. 2d 628, 638 (S.D.N.Y. 1996) ("A complaint predicated on a §1983 violation that fails to allege personal involvement is 'fatally defective on its face.'"); *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 397-398 (S.D.N.Y. 2005) (dismissing §1983 claim against two individually named defendants because complaint failed to allege the "personal involvement" of those defendants in the deprivation of the plaintiff's constitutional rights).[2]

Similarly, the claims under Omnibus Crime Control and Safe Streets Act ("Act" or "Wiretap Act" or "ECPA") must be dismissed against Defendants Malfitano, Cannella, and Scappaticci as there is no allegation that they intentionally intercepted or listened to a communication. The statute requires that the "interception must have been the result of a defendant's conscious objective rather than the product of a mistake or an accident." *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993). Indeed, in *Townsend*, the Second Circuit noted that "[b]efore you can find that the defendant acted intentionally, you must be satisfied . . . that the defendant acted deliberately and purposefully; that is, defendant's act must have been the product of defendant's conscious objective rather than the product of a mistake or accident." *Id.*

---

[2] *See also Connell v. City of New York*, 2002 WL 22033, *5 (S.D.N.Y. 2002) ("In addition, despite conclusory allegations that various individuals engaged in a pattern or practice of discrimination, plaintiff does not allege personal and direct involvement by these individuals in specific acts of employment discrimination. A bald assertion of a Section 1983 claim will not withstand a motion to dismiss."); *Marable v. Kurtz*, 2000 WL 1279763, *4 (S.D.N.Y. 2000) ("The courts have consistently held that, where the complaint names a defendant in the caption but no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.").

at 930. "The language of the . . . Federal Wiretap Act all require[s] "intentional" conduct before giving rise to a statutory violation." *Butera & Andrews v. International Business Machines Corporation*, 456 F. Supp.2d 104, 109 (D.D.C. 2006). As the Senate Judiciary Committee stated when recommending the passage of the Electronic Communications and Privacy Act of 1986, which amended the Wiretap Act to require "intentional" rather than "willful" conduct:

> [T]he term "intentional" [in this context] is narrower than the dictionary definition of "intentional." "Intentional" means more than that one voluntarily engaged in conduct or caused a result. Such conduct or the causing of the result must have been the person's conscious objective. . . . The "intentional" state of mind is applicable only to conduct and results. Since one has no control over the existence of circumstances, one cannot "intend" them.

S. Rep. No. 99-541, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3577.

In light of the foregoing, there can be no finding of liability against Defendants Malfitano, Cannella, or Scappaticci under either §1983 or the ECPA. None of these defendants is alleged to have had – nor did they have – any personal involvement in the installation of the phone system and, as such, cannot be held personally liable.

Finally, Defendants Malfitano, Canella, and Scappaticci have each provided an affidavit to this Court attesting to the fact that they knew nothing of any taped conversations, never authorized the taping and did not even know about any such tapings until the instant complaint was filed. Accordingly, the claims must be dismissed against them entirely.

## POINT III

### THE PLAINTIFFS LACK STANDING

Plaintiffs allege in the complaint that Hall and Pascale "both recorded and listened to the private conversations and/or communications of Plaintiffs and others for unlawful objectives." (Complaint ¶ 13). Nowhere in the complaint, however, do Plaintiffs specify which Plaintiff(s) had their conversations recorded and/or listened to by Hall and Pascale or even to which

10

conversations Plaintiffs are referring. In fact, Defendants maintain that they are unaware of any secret recordings of any private conversations and never listened to any such conversations. Under these circumstances, Plaintiffs have no standing to bring this action as they have not identified any particular recorded and/or listened to conversation.

As aptly stated by one court:

> At a minimum, a named plaintiff must demonstrate the actual interception of at least one of his or her conversations before there can be a justiciable controversy within the meaning of Article III [of the Wiretap Act.] Where there has been no interception, there can have been no injury.

*PBA Local No. 28 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 100-01 (D.N.J. 1991); *accord Gross v. Taylor*, 1997 WL 535872, *5 (E.D. Pa. 1997) ("Plaintiffs have not presented any evidence to demonstrate ... whether an interception actually took place. . . If a mere showing that a person's comments were capable of being intercepted was adequate to state a claim under the wiretap acts in 'this age of powerful surveillance technology,' virtually every comment could lead to a complaint") *quoting Wesley v. Wisconsin Division-Hearst Corp.*, 806 F. Supp. 812, 814 (E.D. Wis. 1992); *United States v. Mark*, 2007 WL 2669576, *4 (D. Vt. 2007) ("Only a defendant whose Fourth Amendment rights have been violated by the surveillance has standing to challenge the admissibility of Title III wiretaps. . . . Accordingly, a defendant must have been either a party to the intercepted conversation or an owner of the premises where the illegal interception occurred in order to seek suppression of a Title III wiretap") *citing United States v. Alderman*, 394 U.S. 165, 171-78 (1969).

In *Gross v. Taylor*, the court dismissed for lack of standing the claims brought by several police officers who were unable to identify any conversations that were actually recorded:

> Gross and Boynton have not produced any direct or circumstantial evidence of actual interception by Taylor, Geschwindt, or Kennedy. They have not produced a tape of any intercepted conversations of the Plaintiffs or other officers, evidence of

11

targeting either Gross or Boynton for electronic surveillance, or testimony about a plan by Defendants to eavesdrop on Plaintiffs' conversations. In addition, there is uncontroverted evidence that the system could not be activated from a remote location by Defendants or anyone else, and that Plaintiffs could have neutralized an "active" system at any time. . . . This makes it even more unlikely that there was an actual interception, *i.e.*, that Defendants acquired "the contents of any wire or oral communication." 18 U.S.C. § 2511; 18 Pa. C.S.A. § 5703. Without evidence of actual recording, Plaintiffs cannot withstand summary judgment.

1997 WL 535872 at *6.

As in *Gross* and *Woodbridge*, Plaintiffs here have not identified a single conversation that was intercepted by the Defendants. In true blunderbuss fashion, Plaintiffs have made absurd conclusory allegations without alleging a scintilla of factual support that would render their claims even remotely plausible. This is patently insufficient. *See In Re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 510 (S.D.N.Y. 2001) ("A plaintiff cannot survive a motion to dismiss a Title II claim based solely on the naked allegation that defendant's access was 'unauthorized.' A plaintiff must, 'allege and proffer sufficient proofs to create a colorable claim that such access was 'unauthorized.'") *citing Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 820-821 (E.D.Mich. 2000); *Twombly*, 127 S. Ct. at 1974 (to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face").

In short, because Plaintiffs lack standing to bring the claims asserted in the complaint, their claims must be dismissed.

## POINT IV

## PLAINTIFFS' LACK OF ANY EXPECTATION OF PRIVACY DEFEATS THEIR FOURTH AMENDMENT AND ECPA CLAIMS

Plaintiffs allege that Hall and Pascale "surreptitiously altered the Department's 911 communications system so as to automatically audio record the voices and/or private

12

conversations of any person at, in front of and/or behind the desk areas in police headquarters . . . ." (Complaint ¶12). Not only is this statement blatantly false, but, even assuming, *arguendo,* that such a statement were true, it fails to state a claim under either the Fourth Amendment or ECPA.

### A.    Fourth Amendment Standard

Whether the interception of an oral communication constitutes a Fourth Amendment violation "depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotations and citation omitted); *accord Katz v. United States*, 389 U.S. 347, (1967). Thus, to state a viable Fourth Amendment claim a plaintiff must allege: (i) "an actual (subjective) expectation of privacy" in the subject communication; and (ii) that the subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Id. citing Katz*, 389 U.S. at 361 (Harlan, J., concurring).[3]

As the Supreme Court has declared, "[t]he touchtone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo,* 476 U.S. 207, 211 (1985) (*quoting Katz*, 389 U.S. at 360 (Harlan, J., concurring)). "Without a reasonable expectation of privacy, a workplace search by a public employer will not violate the Fourth Amendment, regardless of the search's nature and scope." *Leventhal v. Knapek*, 266 F.3d 64, 73 (2d Cir. 2001). Accordingly, Plaintiffs must demonstrate that they had a subjective expectation of privacy in the alleged search or seizure, *and* that their expectation was objectively reasonable. *Id.*

---

[5] The "reasonable expectation of privacy" test, as articulated in Justice Harlan's concurrence, was adopted by a majority of the Supreme Court in *Smith v. Maryland*, 442 U.S. 735, 740-41, (1979). *See United States v. Titemore*, 437 F.3d 251, 256 (2d Cir. 2006).

58704.1 1/25/2008

B.  **ECPA Standard**

The same analysis used under the Fourth Amendment applies to claims under Title III of the ECPA for the interception of oral communications. Indeed, "not every oral communication, as that term is commonly understood, is protected by the ECPA. Rather, the Act guards against the interception of an oral communication only if it is 'uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.'" *Wesley v. Wisconsin Division-Hearst Corp.*, 806 F. Supp. 812, 814 (E.D. Wis. 1992) *quoting* 18 U.S.C. §2510(2).[4]

"According to the legislative history of Title III, the definition of oral communication was intended to parallel the 'reasonable expectation of privacy' test created by the Supreme Court in *Katz v. United States*, 389 U.S. 347 (1967)." *Matter of John Doe Trader Number One*, 894 F.2d 240, 242   (7th Cir. 1990) *citing* S. Rep. No. 1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112-2274; *United States v. Turner*, 209 F.3d 1198, 1200 (10th Cir. 2000) ("the legislative history of Title III shows that Congress intended this definition to parallel the "reasonable expectation of privacy test" articulated by the Supreme Court in *Katz*").   Thus, Congress limited its protection of "oral communications" under Title III to those statements made where "first, a person [has] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361 (Harlan, J., concurring); *accord Gross*, 1997 WL 535872 ("thus, to succeed at trial, Plaintiffs will need to prove that they had a reasonable expectation of privacy or non-interception in the allegedly intercepted conversations"); *United States v. Salemme*, 91 F. Supp.

---

[4] §2510 defines oral communication as "any oral communication uttered by  a person exhibiting an expectation that such communication is not  subject to interception under circumstances justifying  such expectation, but such term does not  include  any  electronic communication."   §2511(1)(a) states that any person violates the statute if they "intentionally intercept[t], endeavor  to  intercept,  or procur[e]  any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication").

14

2d 141, 385 (D. Mass. 1999) ("the Court of Appeals for the First Circuit has stated the statutory provision that a statement be made with the subjective expectation that it will not be intercepted 'under circumstances justifying such expectation' 'require[s] that the speaker have an expectation of privacy that is objectively reasonable'") *citing United States v. Rose*, 669 F.2d 23, 25 (1st Cir. 1982); *Kee v. City of Rowlett*, 247 F.3d 206, 211(5th Cir. 2001) ("statutory claims, arising under 18 U.S.C. § 2511, also are predicated on enjoying a reasonable expectation of privacy in these oral communications").

### C.    Plaintiffs Have No Reasonable Expectation Of Privacy In The Front Desk Area Of Police Headquarters

In light of the foregoing, there can be no Fourth Amendment or ECPA violation here because, as a matter of law, Plaintiffs have no expectation of privacy in the reception area/front desk area of Police Headquarters. "A cornerstone of the objective privacy inquiry is whether the object of a search was exposed to public view." *United States v. Nettles*, 175 F. Supp. 2d 1089, 1093 (N.D. Ill. 2001).

Indeed, as set forth in the affidavit of Dominick Pascale and the accompanying photographs, the front desk area is adjacent to the area where anyone from the general public can freely enter, and areas where any officer or civilian employee of the Department can walk into without being stopped. Two officers regularly staff the front desk, and the front desk area itself is adjacent to a Sergeants' and Lieutenants' office, and the area containing mailboxes, a computer station, key locker, and bulletin board accessible to all. Simply put, anyone in the Department can freely move about the front desk area. Moreover, outside individuals not associated with the department may also gain periodic access to the officer-side of the front desk (for example, if a computer technician is called to repair a desk computer), and anything said behind the front desk can be heard by individuals within the adjacent holding cell. Under these circumstances there can be no expectation of privacy. *See, e.g., Leventhal*, 266 F.3d at 73,

15

*quoting O'Connor v. Ortega*, 480 U.S. 709, 717-18 (1987) (recognizing that offices that are "continually entered by fellow employees and other visitors during the workday for conferences, consultations, and other work-related visits," can be "so open to fellow employees or the public that no expectation of privacy is reasonable.").

For example, in *United States v. Little*, the court rejected the plaintiffs contention that their arrest in their employer's reception area was improper. As the court held:

> A reception area is used for purposes of greeting and screening those who enter an office to determine if the individual is properly there. Also, office workers are generally free to walk through this area. Since the public and office workers are allowed to walk freely into a reception area, an individual working in the office can have no reasonable expectation of privacy there.

753 F.2d 1420, 1436 (9th Cir. 1984).

Similarly, in *Gross v. Taylor*, the court dismissed police officer Plaintiffs' claims that their rights under Title III were violated when conversations in their patrol cars were secretly recorded. In doing so, the court noted that the officers "did not have a reasonable expectation of privacy or non-interception while on duty in a patrol car." 1997 WL 535872 at *6.

In *Kee v. City of Rowlett*, 247 F.3d 206 (5th Cir. 2001), the Fifth Circuit likewise held that family members gathered in a privately owned cemetery for a memorial service for two murdered children had no reasonable expectation of privacy in their conversations and/or prayers. There, Plaintiffs alleged Title III and 4th Amendment violations after they discovered the police had placed an "eavesdropping device" in an urn near a gravesite visited by the plaintiffs. Dismissing the claims, the court cited a number of factors which should be used in determining whether an individual has a reasonable expectation of privacy:

> (1) the volume of the communication or conversation; (2) the proximity or potential of other individuals to overhear the conversation; (3) the potential for communications to be reported; (4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the

16

communications; and (6) the place or location of the oral
communications as it relates to the subjective expectations of the
individuals who are communicating.

247 F.3d at 213-16. Applying these factors, the court concluded that there was no reasonable

expectation of privacy, especially because none of the plaintiffs did anything to preserve the

privacy of their conversations.

It is clear that applying the above factors to the facts of this case, no one would have a

reasonable expectation of privacy at the front desk area of the police station. Any conversations

had there could not only be overheard by other officers and department personnel, but the

general public as well. Anyone overhearing the communication could therefore report the

substance of the conversation. Also, anyone speaking in such an area has taken little if any

precaution to shield their privacy. Had individuals wished to, they could have easily held the

conversation in a private office or away from the public area. Technological enhancements are

not needed to overhear such conversations as they are done in front of others.  Moreover, the

conversations alleged to have been recorded could only have been recorded if the individuals

were speaking at a very high volume. (*See* Pascale Aff. at  ¶¶ 22-23). Finally, even if a

conversation was being recorded, the orange "record" light on the Dictaphone would be

illuminated while anything was being recorded. (Pascale Aff. at ¶¶ 15, 21-22). Under these

circumstances, there can be no reasonable expectation of privacy in this case. *See United States

v. Buettner-Janusch*, 646 F.2d 759, 766 (2d Cir. 1981) (holding that a professor has no

reasonable expectation of privacy in enclosed areas of a university lab that are shared with

another professor and a student research assistant; [w]e agree with the district court that

Buettner-Janusch forfeited any reasonable expectation of privacy by granting permission to use

the enclosed area of his laboratory to Macris, Jolly, and at least eight other persons); *United

States v. Gori*, 230 F.3d 44, 46 (2d Cir. 2000) (individual had "no reasonable expectation of

17

privacy against being seen by persons standing in a public hallway"); *United States v. Holland*, 755 F.2d 253, 255 (2d Cir. 1985) (collecting cases in which Court held common areas not within zone of privacy); *United States v. Barrios-Moriera*, 872 F.2d 12, 14-15 (2d Cir. 1989) (no reasonable expectation of privacy in common hallway) *overruled on other grounds Horton v. California*, 496 U.S. 128 (1990); *United States v. Agapito*, 620 F.2d 324, 329 (2d Cir. 1980) (finding conversations in hotel room loud enough to be heard by others in an adjoining room to undermine a reasonable expectation of privacy); *see also Parra v. Housing and Community Service Agency of Lane County*, 2007 WL 2401743, *18 (D. Or. 2007) ("Plaintiff does not have a reasonable expectation of privacy in trash and recycling containers located in the front desk area"); *United States. v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (exposing the activities within the common hallway to the world is inconsistent with a subjective expectation of privacy); *Gillespie v. Dallas Housing Authority*, 2003 WL 102223, *8 (N.D. Tex. 2003) ("assuming that Gillespie had an expectation of privacy in her office (which she shared with another employee), she would certainly have no objectively reasonable expectation of privacy in the common hallway. Being an undifferentiated area, all employees used the common hallway"); *United States. v. Bissell*, 954, 966 F. Supp. 841 (D.N.J. 1996), *aff'd*, 142 F.3d 429 (3d Cir. 1998) ("Defendant did not have objectively reasonable expectation of privacy that would trigger Fourth Amendment protection from being videotaped while he counted his receipts at front desk of gas station, where customers regularly entered building, desk was clearly visible through large front and side windows, and no efforts were taken to obstruct view of interior from outside"); *United States v. McKinnon*, 985 F.2d 525, 528 (11th Cir. 1993) (holding that defendant did not have a reasonable expectation of privacy for communications initiated in the back seat of a police car); *Wesley v. Wisconsin Division-Hearst Corp.*, 806 F. Supp. 812 (E.D.Wis. 1992) (radio station employee speaking with traffic reporter in presence of microphone had no reasonable

expectation of privacy; "this court finds, however, that such a person, with a general knowledge of what a broadcast microphone does, would have known that the detection of comments made close to the microphone was a distinct possibility. The microphone and its position should have put Wesley on notice that her comments might be intercepted").

In light of the fact that there could be no expectation of privacy at the front desk area of Department headquarters, all of Plaintiffs' claims must be dismissed.

## POINT V

## THE ECPA CLAIMS MAY NOT BE ASSERTED AGAINST A MUNICIPALITY

A number of courts have held that claims under the ECPA may not be pursued against a municipality. *See, e.g., Abbott v. Village of Winthrop Harbor*, 205 F. 3d 976 (7th Cir. 2000) (substantial evidence that Congress explicitly intended to exclude government entities from those subjected to liability under the statute); *Amati v. City of Woodstock*, 829 F. Supp. 998, 1001 (N.D. Ill 1993) (noting that Congress specifically excluded governmental units from the definition of "person" under the statute); *In re New York Municipal Securities Litigation*, 507 F. Supp. 169, 181 n. 24 (S.D.N.Y. 1980) (holding that the term "corporation" did not include "municipal corporations" because it was "wholly inconsistent with the [statute's] legislative history" ); *Anderson v. City of Columbus*, 374 F. Supp. 2d 1240, 1244-46 (M.D. Ala. 2005).

As such, any claims Plaintiffs assert under the ECPA against the Town should be dismissed.

19

## POINT VI

## THE CLAIMS AGAINST DEFENDANTS HALL AND
## PASCALE SHOULD BE DISMISSED

### A.    Hall And Pascale Are Protected By The Doctrine Of Qualified Immunity

Because qualified immunity is an immunity from suit — not merely an immunity from judgment — assertions of qualified immunity should be addressed as early as possible in the judicial process." *Savino v. City of N.Y.*, 331 F.3d 63, 71 (2d Cir. 2003).    Accordingly, Defendants ask this court to consider the documents referenced by the complaint as well as the affidavits submitted by Defendants Hall and Pascale and dismiss them from this matter based on the doctrine of qualified immunity.

The complaint alleges that in a letter Chief Hall admitted to unlawfully taping conversations. In light of the fact that the complaint references this document, it is properly considered by the Court in deciding this motion. A court may consider a document, even if not attached or incorporated by reference, where the complaint "relies heavily upon its terms and effect" thus rendering the document "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

In addition, providing the letter to the Court demonstrates that Plaintiffs and their attorney will make false accusations even when there is clear documentary evidence to the contrary.

The letter, was written in response to a PBA inquiry that stated in pertinent part:

> As you know, this office represents the Town of Harrison Policeman's Association, Inc., and, as such, we are writing regarding the above referenced matter.

> We have been informed by several members of the PBA that the 911 recording system in and around the front desk of headquarters is recording conversations of both the police officers and anyone else that might be in the area, i.e. the general public. Apparently,

20

> whether malfunctioning or not, the system currently goes on by any noise activation, not just 911 telephone calls and continues to run after the telephone call ends. As a result, conversations of officers, or anyone else who happens to be in the desk area, are being recorded. I am bringing this to your attention so that it can be corrected as I am sure that it is being done in error.

(*See* Hall Aff. Exhibit 12). In response, Chief Hall stated:

> In regard to your letter of October 19, 2007, I have looked into the matter concerning the P.B.A.'s complaint about the 911 phone system's ability to record conversations behind the front desk and found that is appears to have been a malfunction in the system.

> The unit gave the officers the ability to replay 911 calls in case an address or house number was missed. It only recorded at the desk area and no where else. Sgt. Pascale informed me that the basic unit has been disconnected. To retrieve a call now, the officers will have to use the computer software.

> I hope I have addressed the concerns related to this matter.

(*See* Hall Aff. Exhibit 13).

Despite Chief's Hall assertion in the letter that the situation resulted from nothing more than a malfunction, the complaint alleges that "prior to October 19, 2007 (the date on which Hall admitted to the unlawful conduct set forth infra in this paragraph and paragraph 13 . . . Defendants Pascale and Hall surreptitiously altered the 911 communications system . . . ." (Complaint ¶ 13). Not only is this a clear mischaracterization of the letter, it is a downright falsehood. Nowhere within this letter is there any admission or even any suggestion that Chief Hall admitted to unlawful conduct.

In furtherance of their "smoke and mirrors" allegations, Plaintiffs further allege that "Defendants Pascale and Hall surreptitiously altered the Department's 911 communications system so as to automatically audio record the voices and/or private conversations of any person at, in front of, and/or behind the from desk area in police headquarters . . . ." (Complaint ¶ 12). Nowhere in the complaint does it say how, when or what was done to alter the communications

21

system. Moreover, although Plaintiff's allege that the conversations were listened to, they fail to allege what, when and how such conversation were listened to by Defendants. This is just another example of Plaintiffs' willingness to make any accusation, without any regard for the truth, no matter how absurd it is. In any case, these conclusory allegations are insufficient to withstand a motion to dismiss. "Allegations that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the Plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim." *Mehrhoff v. William Floyd School District*, 2005 WL 2077292, *3 (E.D.N.Y. 2005) *citing Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987). Because neither Chief Hall nor Sergeant Pascale ever altered any part of the communications system or listened to any unlawfully recorded conversation, no liability can attach.

Finally, even if the unsupported and preposterous assertion that Pascale and Hall deliberately recorded these conversations, such action would be lawful (*see* Point III, *supra)*, since the individuals in the front desk area enjoyed no expectation of privacy in that area. Certainly it cannot be said that it was "clearly established" that such individuals enjoyed an expectation of privacy in that area.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) *quoting Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002). "Stated differently, an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the official's actions were not objectively

unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007).

As set forth above, "early resolution of the qualified immunity defense is encouraged." *Munafo v. Metropolitan Transp. Authority*, 285 F.3d 201, 210 (2d Cir. 2002). Here, in light of the affidavits of Chief Hall and Sergeant Pascale indicating that they engaged in no improper conduct, they should be dismissed from the case on the grounds of qualified immunity.

**B.**     **There Was No Intentional Interception Of Plaintiffs' Conversations**

As set forth in the affidavits of Defendants Hall and Pascale, the recordings of the Plaintiffs' conversations were done inadvertently as a result of either loud banging or very loud conversations. Neither of them ever listened to any such conversations. Indeed, it is undisputed that neither Hall nor Pascale could even remotely monitor the conversations. The machine apparently malfunctioned only when someone banged on the desk or yelled loudly. As such, they had no power to intercept the conversations. As set forth above, the statute requires that the "interception must have been the result of a defendant's conscious objective rather than the product of a mistake or an accident." *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993); *accord Gross v. Taylor*, 1997 WL 535872 at *6 (no interception occurred as defendants could not activate recordings remotely). Because they did not intentionally intercept any conversations, Hall and Pascale cannot be liable.

Moreover, the fact that neither of them listened to the conversations also warrants dismissal of the claims against them. *See Walden v. City of Providence* (D. R.I. 2007) ("there is anecdotal support for Defendants' position that telephone calls automatically recorded, but not listened to, are not 'aurally acquired' within the meaning of § 2510, *see Arias v. Mut. Cent. Alarm Serv., Inc.*, 202 F.3d 553, 558 (2d Cir. 2000) and *Greenfield v. Kootenai County*, 752 F.2d 1387, 1389 (9th Cir. 1985).").

23

**POINT VII**

**PLAINTIFFS' FAILURE TO ALLEGE AN UNCONSTITUTIONAL
CUSTOM OR POLICY WARRANTS DISMISSAL OF THEIR
CLAIMS AGAINST THE TOWN/VILLAGE**

As a matter of law, the Town/Village of Harrison cannot be held liable in this lawsuit under 42 U.S.C. § 1983.

Municipalities cannot be held liable under Section 1983 on a theory of respondeat superior. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 373 (S.D.N.Y. 1999). "Municipal liability under § 1983 for the conduct of employees below the policymaking level requires that a plaintiff show a violation of his constitutional rights that resulted from a municipal custom or policy." *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007).

Here, there is no allegation, custom, or policy attributable to the Town. Indeed, just the opposite is pled, as Plaintiffs allege that the system was *surreptitiously altered*, *i.e.*, the lawful and authorized communications system was secretly changed by two individuals. Although this allegation is patently false, nonetheless, the complaint as pled does not allege a custom of the Town but claims that an act by individuals actually changed the lawful "custom or policy." *Soriano v. Bd. of Educ.*, 2004 WL 2397610, *1 n. 2 (E.D.N.Y. 2004) (dismissing §1983 claim for failure to establish a municipal custom or policy where "plaintiffs relied on defendants' alleged *violation* of the New York City Board of Education's disciplinary policy to buttress their argument that defendants had been deliberately indifferent" to harassment) (emphasis in original); *see also Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir. 1989) (§1983 claim alleging sexual harassment dismissed against defendant New York City Housing Authority; "[the alleged sexual harassment] cannot be fairly attributable to Housing Authority practice or policy. In fact, its stated policies are explicitly non-discriminatory");

24

*Fields v. Omaha Housing Authority*, 2006 WL 176629 *3 (D. Neb. 2006) ("plaintiff cannot maintain an action under § 1983 by claiming that OHA failed to follow its written policy"); *Posey v. Southwestern Bell Telephone Company*, 430 F.Supp.2d 616, 628 (N.D. Tex. 2006) (County cannot be liable under §1983 where it is alleged that employees failed to follow the policy).

As such, the claim against the Town should be dismissed in its entirety.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Defendants' motion to dismiss and/or summary judgment and dismiss the Complaint in its entirety.

Dated:  January 25, 2008
          Garden City, New York

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

 s/Mark N. Reinharz
By:     Mark N. Reinharz  (6201)
Attorneys for Defendants
1399 Franklin Avenue
Garden City, New York  11530
(516) 267-6320

Of Counsel:  Jessica C. Satriano

25

58704.1 1/25/2008

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic service upon the following parties and participants:

Jonathan Lovett, Esq.
222 Bloomingdale Road
White Plains, New York  10605
Attorney for Plaintiff


s/    Mark N. Reinharz
    Mark N. Reinharz (6201)
Bond, Schoeneck & King, PLLC
Attorneys for Defendants
1399 Franklin Avenue, Suite 200
Garden City, New York  11530