UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF          07 Civ. 9617 (WCC )
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI, and,
MICHAEL WALTHER,

                              Plaintiffs,

        -against-

STEPHEN MALFITANO, individually,          **AFFIDAVIT IN OPPOSI-**
JOSEPH CANNELLA, individually,            **TO MOTION TO DISMISS**
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New
York,

                              Defendants.

------------------------------------------------------------x

        ARTHUR MARINELLI, being duly sworn, deposes and says:

        1. I have read the motion papers in connection with Defendants' application to

dismiss the complaint in this law suit and am responding to the material factual

arguments made by them on the basis of my personal knowledge.

        2. On Sunday October 14, 2007, I was the assigned desk officer during the 1600-

2400 tour in Harrison Police Headquarters I observed that the clock on the 911 recording

system read 2210 hours when in fact the time was 2110 hours. Under the circumstances I

checked the 911 system to ascertain that it was functioning properly. In doing so I heard

as recorded by that system a cellular phone conversation that I had had that evening with

my father as well as conversations had at the desk area with Police Officer Joseph Parello

(assistant desk officer) and Police Officer William Curow who was assigned to patrol

"Section 3" but was in Headquarters apparently on a break. I also heard in that connection at least one conversation involving a civilian who had entered Headquarters, approached the desk and requested driving directions. These various conversations occurred while the departmental telephones in the desk area were all "hung up".

3. At the time the recordings (of Parello, Curow and me) referenced in the preceding paragraph were made there was no one else in Headquarters - - no custodial staff, no civilian employees, no supervisors, and no prisoners.

4. With respect to my cellular phone conversation that was so recorded: I spoke in a normal speaking voice. I did not shout or make any other loud noises. Neither of the other officers who was present, Parello and Curow, shouted, yelled or otherwise made any loud noises. None of us banged on or struck any object before and/or when those recordings were made.

5. After I discovered the recording of the civilian, Curow, Parello and myself I played at least one additional conversation that had similarly been recorded earlier that on that date during the day shift. In that connection I heard the voice of Sgt. Michael Olsey and another voice (which I believe was Detective Michael Walther). These recorded conversations collectively lasted approximately one minute in length.

6. With respect to the January 23, 2008, affidavit of Sgt. Dominick Pascale (who recently retired from the Police Department) which document I have read, I submit that it is materially false in at least the following respects:

a. As referenced in paragraph "3" of the Pascale affidavit the Dynametric device (which at the time was connected to the non-emergency phone depicted in Exhibit 8 as annexed to the Pascale affidavit) activated and recorded on at least the Dictaphone

equipment the conversations referenced above at times when no one was speaking in a loud and/or very loud voice. That activation and recording occurred in reference to those conversations in the absence of anyone banging hard and/or very hard on the front desk. Indeed since Sgt. Pascale was not present during the conversations that I later discovered had been recorded, his sworn statement that the Dynametric device "was somehow activated when individuals spoke *very* loud or banged *very* hard on the front desk" (emphasis in original) cannot possibly be true on the basis of his personal knowledge. To the extent he swears that the Dynametric device that caused the recording of the above-referenced conversations "briefly activated" is also materially false. The recorded conversations that I listened to, as indicated, lasted approximately one minute. To the extent Sgt. Pascale swears that "[a]fter being advised of the problem, it was corrected" at best is misleading. The Dynametric was first disconnected many days after the problem was first reported to Pascale.

       b. In paragraph "11" of the Pascale affidavit he swears that persons in the desk area have no expectation of privacy when speaking either to each other or on a telephone device. That may be true during the hours of 9:00 a.m. and 5:00 p.m., Monday through Friday. It is not true during other hours when Headquarters is devoid of people other than persons working the desk. For example, at night and during weekends Headquarters is largely deserted. No "visitors" then are present; nor can they overhear anything. For substantial periods of time there are no prisoners in the booking room during those periods of time; those that are placed in the booking room usually are there for a short period of time and if they are being held for a longer period of time they will be placed in a regular cell that is out of sight and out of earshot of the desk area . And

while Sgt. Pascale states that "there is no expectation of privacy at the front desk area of police headquarters" that is simply untrue. When assigned to the desk I have engaged in numerous private/personal conversations with the assistant desk officer and/or other officers who from time to time enter the desk area. At no time prior to October 14, 2007, had I been aware that any of those conversations were being recorded; had I been alerted to that recording, I would not have engaged in any private or personal communications in the desk area.

c. In paragraph "13" of the Pascale affidavit he recites, with regard to the digital voice recording system, that the Dynametric "malfunction described below [in the affidavit] had nothing to do with this system. In fact the contrary is true. The Dynametric component was connected to the non-emergency digital recording system and when it activated as I described above, it caused a recording to be made on the Dictaphone and/or analog recording system. Without pre-trial discovery regarding the "permanent" records of the digital voice recording system referenced in paragraph "13" of the Pascale affidavit, we presently do not know if the Dynametric activation on October 14, 2007, and on prior occasions resulted in recordings being made on the digital voice recording system to which Pascale and the departmental administration could access by computer on a remote basis at any time.

d. In paragraph "14" of the Pascale affidavit he swears that the Dictaphone is redundant to the digital voice recording system, but. . .it allows an officer to listen to a 911 call immediately after that call comes in without the officer having to take the time to log-on to the computer, sign-in and search the recording database to find the call. In fact the first order of business when an officer begins desk duty is to log on to the desk

computer and sign in - - an to remain logged on and signed in until the end of the officer's tour of duty. Moreover once logged on and signed in an officer can virtually immediately find and replay any 911 call that has been recorded.

      e. In paragraph "15(iv)" of the Pascale affidavit reference is made to an "orange light" that, when on, indicates that the Dictaphone is recording. That light is extremely small and unless an officer is looking directly at it, anyone being recorded will not receive any notice/warning. Indeed when I was recorded during a cell phone call with my father, I was seated with my back to the desk - - facing away from the Dictaphone.

    7. Prior to my fortuitous discovery that I and others present in the desk area were being recorded, I had no idea that that recording was going on. In that connection and with respect to my conversations at the desk area - - other than those involving telephone communications on the phones at the desk and communications with civilians and/or prisoners - - I have always had an expectation of privacy.

    8. With respect to the members of the Town's Police Commission, I have read their respective affidavits in which they claim to have had no awareness of the surreptitious recordings being made at the desk. As the Commissioners in charge of the Police Department they have taken absolutely no action (suspension, formal disciplinary charges, command discipline, and/or investigation) with respect to either the Police Chief and/or the Police Captain who by their own admissions against interest installed and/or had installed in the men's locker room a surveillance camera with both audio and video capacities. The Commissioners, I submit, by their countenancing that unlawful conduct as pertains to the locker room, affirmatively encouraged and ratified the eavesdropping that has occurred at the desk area. Furthermore, the Commissioners

acknowledge that they are now on actual notice regarding the desk area eavesdropping

about which they - - as well as the Chief of Police - - also have done nothing. Their

failure to affirmative take disciplinary action and/or investigative action in my opinion

also constitutes a knowing ratification and/or condonation of the eavesdropping at the

desk and in the locker room.

WHEREFORE the motion should in all respects be denied.

_____
Arthur Marinelli

Sworn to before me this
12th day of March, 2008.

_____
Notary Public

JONATHAN LOVETT
Notary Public, State of New York
No. 4666713
Qualified in Westchester County
Commission Expires November 30, 20 10