UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI, and,
MICHAEL WALTHER,

                Plaintiffs,      07 Civ. 9617 (WCC)

    -against-

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New
York,

                Defendants.

------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR TO DISMISS

### Preliminary Statement

This memorandum of law is submitted in opposition to Defendants' motion for summary judgment pursuant to FRCP 56 and/or for dismissal of the complaint pursuant to FRCP 12(b)(6). To the extent that movants seek judgment pursuant to Rule 56 they have neglected to serve and/or file a 56.1 statement, an omission which in and of itself justifies denial of that aspect of their application.

1

## Counterstatement of the Facts

On Sunday October 14, 2007, while Police Officer Arthur Marinelli was the assigned desk officer during the 1600-2400 tour in Harrison Police Headquarters he observed that the clock on the 911 recording system read 2210 hours when in fact the time was 2110 hours. Under the circumstances he checked the 911 system to ascertain whether it was functioning properly (Marinelli Affidavit at 2).

In doing so he heard as recorded by that system a cellular phone conversation that he personally had had that evening with his father as well as conversations he had had at the desk area with Police Officer Joseph Parello (assistant desk officer) and Police Officer William Curow who was assigned to patrol "Section 3" but was in Headquarters on a break. *Ibid.*

In addition Marinelli also heard in that connection at least one conversation involving a civilian who had entered Headquarters, approached the desk and requested driving directions. These various conversations occurred while the departmental telephones in the desk area were all "hung up". *Ibid.*

At the time these recordings of Parello, Curow and Marinelli were made there was no one else in Headquarters - - no custodial staff, no civilian employees, no supervisors, and no prisoners. *Ibid.*

With respect to Officer Marinelli's cellular phone conversation that was so recorded he spoke in a normal speaking voice. He did not shout or make any other loud noises. And neither of the other officers who was present, Parello and Curow, shouted, yelled or otherwise made any loud noises. None of the three officers banged on or struck any object before and/or when those recordings were made (Marinelli Affidavit at 4).

2

Following Marinelli's discovery of the recording of the civilian, Curow, Parello and himself, Marinelli played at least one additional conversation that had similarly been recorded earlier that on that date during the day shift. In that connection he heard the voice of Sgt. Michael Olsey and another voice (which he believes was Detective Michael Walther). These recorded conversations collectively lasted approximately one minute in length (Marinelli Affidavit at 5).

With respect to the January 23, 2008, affidavit of Sgt. Dominick Pascale (who recently retired from the Police Department) it is materially false in at least the following respects:

As referenced in paragraph "3" of the Pascale affidavit the Dynametric device (which at the time was connected to the non-emergency phone depicted in Exhibit 8 annexed to the Pascale affidavit) activated and recorded on at least the Dictaphone equipment the conversations referenced *supra* at times when no one was speaking in a loud and/or very loud voice. That activation and recording occurred in reference to those conversations in the absence of anyone banging hard and/or very hard on the front desk [Marinelli Affidavit at 6(a)]. Contrary to Pascale's sworn statement, the "problem" with the Dynametric device was not immediately corrected; the device was disconnected days later [Walther Affidavit at 2(a)].

Indeed since Sgt. Pascale was not present during the conversations that which Marinelli later discovered had been recorded, his sworn statement that the Dynametric device "was somehow activated when individuals spoke *very* loud or banged *very* hard on the front desk" (emphasis in original) cannot possibly be true on the basis of his personal knowledge. To the extent he swears that the Dynametric device that caused the recording

3

of the above-referenced conversations "briefly activated" is also materially false. The recorded conversations that Marinelli listened to, as indicated *supra*, lasted approximately one minute. To the extent Sgt. Pascale swears that "[a]fter being advised of the problem, it was corrected" at best is misleading. The Dynametric was first disconnected many days after the problem was first reported to Pascale [Marinelli Affidavit at 6(a)].

In paragraph "11" of the Pascale affidavit he swears that persons in the desk area have no expectation of privacy when speaking either to each other or on a telephone device. That may be true during the hours of 9:00 a.m. and 5:00 p.m., Monday through Friday. It is not true during other hours when Headquarters is devoid of people other than persons working the desk [Marinelli Affidavit at 6(b); Walther Affidavit at 2(b)].

For example, at night and during weekends Headquarters is largely deserted. No "visitors" then are present; nor can they overhear anything. For substantial periods of time there are no prisoners in the booking room during those periods of time; those prisoners that are placed in the booking room usually are there for a short period of time and if they are being held for a longer period of time they will be placed in a regular cell that is out of sight and out of earshot of the desk area [Marinelli Affidavit at 6(b)].

While retired Sgt. Pascale states that "there is no expectation of privacy at the front desk area of police headquarters" that is simply untrue. When assigned to the desk Marinelli has engaged in numerous private/personal conversations with the assistant desk officer and/or other officers who from time to time enter the desk area. At no time prior to October 14, 2007, was Marinelli aware that any of those conversations were being recorded; had he been alerted to that recording, he would not have engaged in any private or personal communications in the desk area. *Ibid.*

In paragraph "13" of the Pascale affidavit he recites, with regard to the digital voice recording system, that the Dynametric "malfunction described below [in the affidavit] had nothing to do with this system. In fact the contrary is true [Marinelli Affidavit at 6(c)].

The Dynametric component was connected to the non-emergency digital recording system and when it activated described by Marinelli *supra*, it caused a recording to be made on the Dictaphone and/or analog recording system. Without pre-trial discovery regarding the "permanent" records of the digital voice recording system referenced in paragraph "13" of the Pascale affidavit, Plaintiffs presently do not know if the Dynametric activation on October 14, 2007, and on prior occasions resulted in recordings being made on the digital voice recording system which Pascale and the departmental administration could access by computer on a remote basis at any time. *Ibid*.

In paragraph "14" of the Pascale affidavit he swears that the Dictaphone is redundant to the digital voice recording system, but. . .it allows an officer to listen to a 911 call immediately after that call comes in without the officer having to take the time to log-on to the computer, sign-in and search the recording database to find the call. In fact the first order of business when an officer begins desk duty is to log on to the desk computer and sign in - - and to remain logged on and signed in until the end of the officer's tour of duty. Moreover once logged on and signed in an officer can virtually immediately find and replay any 911 call that has been recorded [Marinelli Affidavit at 6(d); Walther Affidavit at 2(c)].

In paragraph "15(iv)" of the Pascale affidavit reference is made to an "orange light" that, when on, indicates that the Dictaphone is recording. That light is extremely small and unless an officer is looking directly at it, anyone being recorded will not receive any notice/warning. Indeed when Marinelli was recorded during a cell phone call with his father on the night of October 14, 2007, he was seated with his back to the desk - - facing away from the Dictaphone [Marinelli Affidavit at 6(e); Walther Affidavit at 2(d)].

Prior to Marinelli's fortuitous discovery that he and others present in the desk area were being recorded, he had no idea that that recording was going on. In that connection and with respect to his conversations at the desk area - - other than those involving telephone communications on the phones at the desk and communications with civilians and/or prisoners - - he has always had an expectation of privacy (Marinelli Affidavit at 7)

As to the members of the Town's Board of Police Commissioners (Malfitano, Cannella and Scappaticci) they are in charge of the Police Department but have taken absolutely no action (suspension, formal disciplinary charges, command discipline, and/or investigation) with respect to either the Police Chief and/or the Police Captain who by their own admissions against interest installed and/or had installed in the men's locker room a surveillance camera with both audio and video capacities. By the Commissioners' countenancing that unlawful conduct as pertains to the locker room, they affirmatively encouraged and ratified the eavesdropping that has occurred at the desk area. Furthermore, the Commissioners now acknowledge that they are now on actual notice regarding the desk area eavesdropping about which they - - as well as the Chief of

Police - - also have done nothing. Their collective failure to affirmative take disciplinary action and/or investigative action under the circumstances also constitutes a knowing ratification and/or condonation of the eavesdropping at the desk and in the locker room (Marinelli Affidavit at 8).

With respect to paragraph "23" of the affidavit and the claim that Det. Walther advised Pascual that he was satisfied with his and/or "our" findings is absolutely false. Walther never indicated to Pascale either in words or substance that he was satisfied and/or content with any findings regarding the surreptitious recording at the desk. In fact having discussed the matter with Pascual, Walther left the desk area having already made up his mind to ask the PBA attorneys to write to the Chief of Police regarding the desk recording problem. The PBA attorneys' correspondence as requested by Walther is annexed as Exhibit 12 to the Pascale affidavit. In sum it had to have been clear to Pascale that Walther was not satisfied at all with respect to his findings. To the extent Pascale claims that he "would have disconnected the Dynametric" when he and Walther were discussing the surreptitious recordings, that profession of supposed intent is materially inconsistent with his advice to Walther at the time: "If you know that you are being recorded [at the desk], don't say anything that you don't want us to hear" [Walther Affidavit at 2(e)].

7

# POINT I

## SINCE MALFITANO, CANNELLA, SCAPPATICCI, AND HALL HAVE RETIFIED THE ON-GOING UNLAWFUL CONDUCT WITH RESPECT TO EAVESDROPPING, THEY ARE EACH ANSWERABLE IN DAMAGES

Admitted the members of the Board of Police Commissioners and Hall long ago learned of the placement in the men's locker room of a video camera with audio capacity with regard to which they took absolutely no disciplinary and/or investigatory actions. With respect to the eavesdropping at the desk area in Headquarters they each now concede awareness, yet none of them have taken any disciplinary and/or investigatory action whatsoever.

In short these four defendants have intentionally condoned, ratified and encouraged the unlawful behavior at issue in this and the earlier filed law suits. Under well-settled law they are, for those reasons, personally answerable in damages. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).

## POINT II

### PLAINTIFFS HAVE STANDING TO SUE

According to the presently incontrovertible allegations of the complaint, in connection with the eavesdropping conducted at the desk area in Headquarters Hall and Pascale have "routinely both recorded and then listened to the private conversations and/or communications of Plaintiffs and others". And with respect to Plaintiffs' opposition to the instant motion, Police Officer Arthur Marinelli details the date, times and substance of conversations that were the subject of eavesdropping - - identifying at least five members of the Police Department (including himself and Det. Walther) and one civilian who were the subject of illegal recordings.

Against this background we submit that movants' assertion that Plaintiffs lack standing to sue is without merit.

## POINT III

### PLAINTIFFS HAD AN EXPECTATION OF PRIVACY

Claiming that as a matter of fact no one at the desk area of Headquarters could have any expectation of privacy (Memorandum at 13-16), movants claim that as a matter of law Plaintiffs rights as guaranteed by the Fourth Amendment and ECPA claims. We disagree.

As a matter of fact, as set forth in the Marinelli and Walther affidavits, Defendants' arguments regarding a lack of expectation of privacy are simply false and

9

misleading. Since there was an expectation of privacy, both the Fourth Amendment and ECPA claims are viable. <u>Williams v. City of Tulsa, Oklahoma</u>, 393 F.Supp. 1124, 129-30 (N.D. Okla., 2005).

## POINT IV

## ECPA CLAIMS MAY BE ASSERTED AGAINST A MUNICIPALITY

Claiming that a "number of courts have held that claims under the ECPA may not be pursued against a municipality, movants cite two cases and declare victory (Memorandum at 19). Since even the most cursory case law review discloses compelling federal cases holding to the contrary, we submit that the issue should be resolved against movants for the reasons ascribed in the cases upon which we place reliance. <u>Adams v. City of Battle Creek</u>, 250 F.3d 980, 985 (6th Cir. 2001); <u>Organizacion JD Ltda. V. United States Department of Justice</u>, 18 F3d 91, 94-5 (2d Cir. 1994); <u>Walden v. City of Providence</u>, 495 F.Supp.2d 245, 266-7(DCRI, 2007); <u>Van Williams v. City of Tulsa, Oklahoma</u>, 393 F.Supp.2d 1124, 1132-3 (N.D.Okla., 2005); <u>Conner v. Tate</u>, 130 F.Supp.2d 1370, 1373-5); <u>Dorris v. Absher</u>, 959 F.Supp. 813, 819-20 (M.D. Tenn. 1997); <u>PBA Local No. 38 v. Woodbridge Police Department</u>, 832 F. Supp. 808, 822-3 (D.N.J., 1993).

10

## POINT V

## NEITHER HALL NOR PASCUAL IS ENTITLED TO QUALIFIED IMMUNITY

According to movants "the recordings of the Plaintiffs' conversations were done inadvertently as a result of either loud banging or very loud conversations. . .[t]he machine apparently malfunctioned only when someone banged on the desk or yelled loudly" (Memorandum at 23). Since the Marinelli affidavit makes it clear that Defendants' factual premise is simply false no particular degree of insight is required to conclude that both Hall and Pascual are not entitled to qualified immunity for the very reasons cited by movants in their memorandum of law at pp. 22-3.

In any event the admission against interest made by Pascale to Det. Walthers confirms that the eavesdropping was neither the product of inadvertence or a malfunction: "If you know that you are being recorded [at the desk] don't say anything **that you don't want us to hear**" [Affidavit at 2(e), emphasis added].

## POINT VI

## THE TOWN/VILLAGE IS ANSWERABLE IN DAMAGES

Collectively a majority of the Board of Police Commissioners in this case has, for the reasons set forth *supra*, affirmatively condoned, ratified, and encouraged illegal eavesdropping in the police department's locker room and at the desk area. Under the circumstances since those Commissioners are the final, discretionary policy making individuals responsible for the conduct of the department, their conduct establishes a policy and/or practice sufficient to hold the municipal corporation liable.

11

## Conclusion

The motion should in all respect be denied.

Dated: White Plains, N.Y.
March 15, 2008

LOVETT & GOULD, LLP
By:
Jonathan Lovett (4854)
Attorneys for Plaintiffs
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401