```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
RALPH TANCREDI, EDWARD ARCE, WILLIAM C.   :
DUFFELMEYER, ARTHUR MARINELLI, STEVEN         07 Civ. 9617 (WCC)
HEISLER, JEFF NARDI, STEPHEN              :
CARPINIELLO, PETER DeVITTORIO, MICHAEL        ECF CASE
MARINELLI and MICHAEL WALTHER,            :

                    Plaintiffs,           :

            - against -                   :       OPINION
                                                  AND ORDER
STEPHEN MALFITANO, individually,          :
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,         :
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the         :
TOWN/VILLAGE OF HARRISON, New York,
                                          :
                    Defendants.
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

           LOVETT & GOULD, LLP
           **Attorneys for Plaintiffs**
           222 Bloomingdale Road
           White Plains, New York 10605

JONATHAN LOVETT, ESQ.

    Of Counsel

           BOND SCHOENECK & KING PLLC
           **Attorneys for Defendants**
           1399 Franklin Avenue, Suite 200
           Garden City, New York 11530

MARK N. REINHARZ, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiffs, Ralph Tancredi ("Tancredi"), Edward Arce ("Arce"), William C. Duffelmeyer ("Duffelmeyer"), Arthur Marinelli ("A. Marinelli"), Steven Heisler ("Heisler"), Jeff Nardi ("Nardi"), Stephen Carpiniello ("Carpiniello"), Peter DeVittorio ("DeVittorio"), Michael Marinelli ("M. Marinelli") and Michael Walther ("Walther"), bring this action under 42 U.S.C. § 1983 alleging violations of their rights under the Fourth Amendment of the United States Constitution and violations of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2520. Defendants, Stephen Malfitano ("Malfitano"), Joseph Cannella ("Cannella"), Thomas Scappaticci ("Scappaticci"), Dominick Pascale ("Pascale"), David Hall ("Hall") and the Town and Village of Harrison, New York (the "Town" or "Harrison") moved to dismiss plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(6) or for summary judgment pursuant to FED. R. CIV. P. 56. For the reasons stated below, defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiffs are employed by the Town Police Department (the "Department"). (Complt. ¶ 3.) Defendants Malfitano, Cannella and Scappaticci at all relevant times were duly elected members of the Town Board and the Town Board of Police Commissioners. (*Id.* ¶ 4.) Defendant Pascale at all relevant times was employed by the Department as a Sergeant and was in charge of the Department's communications system and all recording devices. (*Id.* ¶ 5.) Defendant Hall at all relevant times was the Chief of Police. (*Id.* ¶ 6.)

Plaintiffs allege that, prior to October 19, 2007, Pascale and Hall surreptitiously altered the Department's 911 communications system so as to automatically audio record the conversations of

1

any person at the front desk area in Department Headquarters ("Headquarters"). (*Id*. ¶ 12.) Plaintiffs allege that they did this without the knowledge, permission or consent of plaintiffs or others. (*Id*.) Plaintiffs allege that, by this means, Hall and Pascale, among others, recorded and listened to the conversations of plaintiffs and others. (*Id*. ¶ 13.)

Plaintiffs allege that Malfitano, Cannella and Scappaticci have, over the past two years, been repeatedly advised that Hall and other high-ranking members of the Department have engaged in criminal wrongdoing. (*Id*. ¶ 14.) Plaintiffs allege that, despite this knowledge, Malfitano, Cannella and Scappaticci have refused to take any remedial action to prosecute or remove Hall and others. (*Id*. ¶ 15.) Plaintiffs claim that through this inaction they have knowingly authorized, ratified or adopted as municipal practice the commission of those crimes, including the recording of conversations at the front desk. (*Id*. ¶ 16.)

Plaintiffs bring this action on their own behalf and as a putative class action pursuant to FED. R. CIV. P. 23 on behalf of all persons who, without their knowledge or consent, have had their conversations at the front desk of Headquarters recorded.[1] (*Id*. ¶¶ 8-11.)

**DISCUSSION**

**I.    Legal Standard**

A motion brought under FED. R. CIV. P. 12(b)(6) posits that the plaintiff has failed "to state

---

[1] Defendants argue that plaintiffs lack standing to bring this action because they have not identified any particular recorded and/or listened-to conversation. (Defs. Mem. Supp. Mot. Dismiss at 11); s*ee United States v. Kaczowski*, 114 F. Supp. 2d 143, 156 (W.D.N.Y. 2000). However, plaintiff A. Marinelli, in his affidavit, describes several conversations between himself and other officers and members of the public, which were recorded on October 14, 2007. (A. Marinelli Aff. ¶ 2.) Because we grant defendants' motion on other grounds, we determine that plaintiffs have provided enough evidence to establish a justiciable controversy.

a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.). In assessing the legal sufficiency of a claim, the Court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference. *See* FED. R. CIV. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir. 1996).

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). The fact pleading standard is "a flexible 'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

Summary judgment is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *See* FED. R. CIV. P 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The burden is on the movant to demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether to grant summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

**II.     Local Rule 56.1**

Plaintiffs argue that defendants' motion for summary judgment should be summarily denied, because defendants did not serve or file a separate, short and concise statement, in numbered paragraphs, of the undisputed material facts pursuant to S.D.N.Y. Local Civil Rule 56.1. (Pls. Mem.. Opp. Mot. Dismiss at 1.) According to the relevant part of the Rule, which is applicable in the United States District Courts for the Eastern and Southern Districts of New York: "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, *in numbered paragraphs*, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." S.D.N.Y. LOCAL CIV. R. 56.1(a) (emphasis in original). "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

In its exercise of this broad discretion, the Court will overlook defendants' failure to adhere to Local Civil Rule 56.1 because: defendants submitted evidence in the form of affidavits to which plaintiffs responded; the facts about the front desk area upon which we rely to determine this motion are not in dispute and plaintiffs have not alleged that they suffered any prejudice from the failure, nor could they because the relevant facts were readily apparent from the "Facts" section of the

memorandum of law and the supporting affidavits. *See Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 n. 2 (2d Cir. 2003) (noting that failure to comply with Local Civil Rule 56.1 was excused since the relevant facts were apparent from the parties' submissions and there was no evidence of prejudice from the defect); *Gilani v. GNOC Corp.*, 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1 where defendant provided depositions of several individuals with personal knowledge and the parties both had time to either brief the motion or request additional discovery); *Williams v. R.H. Donnelley, Inc.*, 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (Conner, J.) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law).

### III.     Fourth Amendment Claim

The Fourth Amendment protects individuals from unreasonable searches conducted by the government, even when the government acts as an employer. *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989) (citing *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987)). The safeguards of the Fourth Amendment apply to both residential and commercial premises. *New York v. Burger*, 482 U.S. 691, 699 (1987). The government employer becomes engaged in a search only when the inquiry intrudes upon an area where the employee has a reasonable expectation of privacy. *Lukas v. TriBorough Bridge & Tunnel Auth.*, 1993 WL 597132, at *5 (E.D.N.Y. Aug. 18, 1993) (citing *O'Connor*, 480 U.S. at 715; *Coppinger v. Metro-North Commuter R.R.*, 861 F.2d 33, 35 (2d Cir. 1988)). In this case, plaintiffs must show that their expectation that conversations at the front desk of Headquarters were private is "an expectation of privacy that society is prepared to consider

reasonable." *O'Connor*, 480 U.S. at 715 (internal quotation marks and citation omitted). Whether a public employee has a reasonable expectation of privacy depends on the context of the employment relationship and must be determined on a "case-by-case basis." *Id*. at 717-18.

The front desk of Headquarters, located immediately inside the main entry of Headquarters, serves as the "reception desk," and any member of the public can enter the reception area in front of this desk. (Pascale Aff. ¶ 4.) A partial glass partition separates the officer side of the desk from the public-visitor side, however there is a large central opening in the glass that cannot be closed. (*Id*. ¶ 5.) A holding cell is adjacent to the front desk area and a plexiglass partition that can be opened and closed separates the officer side of the desk from the cell. (*Id*. ¶ 6.) When someone is held in the cell the partition is kept open so the officer assigned to the front desk can keep watch over the cell and hear the individual within; the person in the holding cell can also hear things said and done at the front desk. (*Id*.) The plexiglass partition is not sound-proof, even when closed. (*Id*.)

The officer side of the front desk is equipped with two 911 call stations and is usually staffed with an officer for each station, however on some occasions one officer will work both stations. (*Id*. ¶ 7.) Officers have unfettered access to enter the officer side of the front desk at any time, even if not assigned to work there. (*Id*. ¶ 8.) All members of the Department, including officers, administrative staff and custodians, have access to the officer side of the front desk. (*Id*.) The officer side of the front desk has a bulletin board that usually contains a number of postings, mailboxes for all the sergeants and a computer station used by personnel. (*Id*. ¶ 9.) Officers enter the area to pick up copies of police reports and summonses, obtain keys to patrol cars, retrieve their mail and enter the sergeants' and lieutenants' areas (adjacent to the officer side of the front desk). (*Id*.) Other individuals not associated with the Department, such as repair technicians, periodically gain access

to the officer side of the desk. (*Id*. ¶ 10.)

Plaintiffs state that, outside the hours of 9:00 a.m. to 5:00 p.m., Monday through Friday, Headquarters is "devoid" of people other than persons working the desk. (A. Marinelli Aff. ¶ 6(b).) At night and during the weekends there are no visitors present to overhear anything, and for substantial periods of time there are no prisoners in the holding cell. (*Id*.) If someone is placed in the holding cell he or she is usually held there for a short period before being placed in a regular cell out of sight and earshot of the front desk. (*Id*.) Plaintiffs claim to have an expectation of privacy at the desk; they have engaged in private conversations there with other officers and at no time prior to the incident discussed above were they aware that conversations were being recorded. (*Id*.)

Headquarters is a building open to the public at all times, and at any time a member of the public can enter the reception area and approach the front desk. The officer side of the front desk can not be closed off to the public side because of the permanent opening in the partition. Indeed, members of the public have many reasons to enter a police station, for example, to report a crime or obtain directions, and these reasons are not limited to the hours of 9:00 a.m. to 5:00 p.m., Monday through Friday. For this reason, the area is similar to the public areas of apartment buildings, such as hallways and lobbies, to which no expectation of privacy attaches. *See United States v. Gori*, 230 F.3d 44, 46 (2d Cir. 2000) (determining that occupants of apartment, having voluntarily exposed themselves to public view by answering the door to receive their food delivery, had no reasonable expectation of privacy against being seen by persons standing in a public hallway); *United States v. Barrios-Moriera*, 872 F.2d 12, 14-15 (2d Cir. 1989), *abrogated on other grounds*, *Horton v. California*, 496 U.S. 128 (1990) (finding no legitimate expectation of privacy in common hallway); *United States v. Holland*, 755 F.2d 253, 255-56 (2d Cir. 1985) ("Accordingly, it is the established law

of this Circuit that the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors."); *see also United States v. Bissell*, 954 F. Supp. 841 (D.N.J. 1996), *aff'd*, 142 F.3d 429 (3d Cir. 1998) (determining that defendant had no reasonable expectation of privacy while behind the front desk of a gas station because the interior of the office could be clearly seen through the large windows on three sides of the building and the office was open to the public who would come in to pay their bills, ask directions or make purchases).

The officer side of the front desk is also not a personal work space. There are two 911 call stations, each usually staffed with an officer. All members of the Department have free access to the area, and frequently enter it to check the bulletin board, get their mail, go on the computer, get patrol car keys or access the sergeants' and lieutenants' areas. Additionally, when individuals are detained in the holding cell the partition separating the cell from the front desk is left open. Employees have no expectation of privacy in common or shared worked areas, such as break-rooms and shared offices. *See United States v. Buettner-Janusch*, 646 F.2d 759, 766 (2d Cir. 1981) (agreeing with district court that defendant forfeited any reasonable expectation of privacy by granting permission to use the enclosed area of his laboratory to at least ten people); *Sheppard v. Beerman*, 822 F. Supp. 931 (E.D.N.Y. 1993), *vacated on other grounds*, 18 F.3d 147 (2d Cir. 1994). *But see Leventhal v. Knapek*, 266 F.3d 64, 73-74 (2d Cir. 2001) (determining plaintiff had reasonable expectation of privacy in his office computer in a private office with a door where he had exclusive use of the desk, filing cabinet, and computer and did not share the use of his computer with other employees, visitors or the public).

The fact that the front desk is located within the reception area of a police station further

diminishes the reasonableness of any expectation of privacy. In *Gross v. Taylor*, the court held that police officers did not have a reasonable expectation of privacy or non-interception while on duty in a patrol car. 1997 WL 535872, at *6 (E.D. Pa. Aug. 5, 1997). The court compared the patrol car to a prison, and noted that other courts have generally refused to acknowledge a reasonable expectation of privacy for conversations which take place in prisons, even for those who work there. *Id*. at *7 (citing *Lanza v. State of New York*, 370 U.S. 139, 143-44 (1962)). The court noted that, like the prison, the patrol car is associated with the purposes of preventing crime and controlling criminals, and therefore its very nature and purpose give notice to individuals that their privacy is diminished. *Id*.; *see also United States v. McKinnon*, 985 F.2d 525, 528 (11th Cir. 1993) (no expectation of privacy for communications in back seat of police car).

In *United States v. Little*, the plaintiff claimed that Internal Revenue Service agents violated the "knock and notice" requirement of 18 U.S.C. § 3109 by failing to give notice prior to arresting him in his office. 753 F.2d 1420, 1436 (9th Cir. 1984). The Ninth Circuit determined that section 3109 was inapplicable because the plaintiff was arrested in the reception area during business hours and therefore did not have a reasonable expectation of privacy. *Id.*

> A reception area is used for purposes of greeting and screening those who enter an office to determine if the individual is properly there. Also, office workers are generally free to walk through this area. Since the public and office workers are allowed to walk freely into a reception area, an individual working in the office can have no reasonable expectation of privacy there.

*Id*.

Plaintiffs argue that beyond the hours of 9:00 a.m. to 5:00 p.m., Monday through Friday, there are no visitors in Headquarters, and individuals placed in the holding cell are only placed there for a short period of time. However, Headquarters is open to the public during all hours and at any time

9

a member of the public can enter the reception area. The natural rhythm of life, in which most activity occurs during typical "working hours," does not change the fact that the area is open and accessible to the public at any time. Additionally, plaintiffs' argument fails to account for the fact that officers on duty, during any shift, have open and continuous access to the officer side of the front desk. The fact that the area, at any time, is open to the public and is a common workplace makes any expectation of privacy in this area unreasonable. Finally, the very nature of the work that occurs at the front desk—serving the public in person or by receiving 911 calls—does not support a notion of privacy. There is no genuine issue of material fact as to the layout of and access to the front desk of Headquarters and the nature of the work performed there, and it is on this evidence that we determine that plaintiffs have no reasonable expectation of privacy in that area.

Although plaintiffs certainly claim to have had a subjective expectation of privacy at the front desk, the application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," "reasonable," or "legitimate" expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). This inquiry has two parts: a determination of whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy" and a determination of whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as reasonable." *Id*. (internal quotation marks and citations omitted); s*ee United States v. Paulino*, 850 F.2d 93 (2d Cir. 1988). Because we determine that society is not prepared to recognize an expectation of privacy at the front desk of a police station as reasonable, plaintiffs have no legitimate expectation of privacy and therefore no Fourth Amendment claim.

**IV.     Omnibus Act Claim**

Title III provides, in pertinent part, that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). The statute defines an "oral" conversation, in pertinent part, as "'any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.'" *United States v. Willoughby*, 860 F.2d 15, 22 (2d Cir. 1988) (quoting 18 U.S.C. § 2510(2)). The Second Circuit has stated that "'the Fourth Amendment protects people, not places,' . . . and the statutory definition of an 'oral communication' tracks this constitutional concept." *United States v. Pui Kan Lam*, 483 F.2d 1202, 1206 (2d Cir. 1973) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). In considering a Title III claim the inquiry is therefore the same as that for a Fourth Amendment claim, "whether the subjective expectation of privacy violated by the allegedly illegal intrusion is one society is prepared to recognize as 'justifiable.'" *Id.*; *see Willoughby*, 860 F.2d at 22. Because we determined that plaintiffs have no justifiable expectation of privacy in conversations held at the front desk of Headquarters, they can not assert a claim under Title III.[2]

---

[2] Plaintiffs do not allege that defendants intercepted any wire communications, and therefore we need not engage in an analysis of that issue. Additionally, because we dismiss plaintiffs' claims on the basis that there is no reasonable expectation of privacy, we need not consider defendants' other arguments.

## CONCLUSION

For all of the foregoing reasons, the defendants' motion for summary judgment is granted.

The Clerk's Office is directed to enter judgment for defendants.


SO ORDERED.

Dated: White Plains, New York
       June 25, 2008

                                                         _____
                                                         Sr. United States District Judge