UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

                    Plaintiffs,

    - against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

                      Defendants.
------------------------------------x

Civil Action No. 07-9617
(WAC) (LMS)

AFFIDAVIT OF
MARK N. REINHARZ
IN SUPPORT OF
DEFENDANTS' MOTION
FOR ATTORNEYS' FEES

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF NASSAU    )

    MARK N. REINHARZ, being duly sworn, deposes and says:

    1.    I am a member of Bond, Schoeneck & King, PLLC ("BS&K"). I am the attorney responsible for the above-captioned matter and submit this affidavit in connection with the Defendants' motion for attorneys' fees against Plaintiffs and/or their counsel.

### BACKGROUND

    2.    On or about November 2, 2007, the Plaintiffs filed the complaint in the above-captioned matter. In the complaint, Plaintiffs alleged violations of their constitutional rights to privacy and their statutory rights under the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §2520. when the Harrison Police Department's 911 communications system recorded

their conversations at the front desk of Headquarters regardless of whether there was an emergency 911 telephone call in progress. In addition to suing the Town of Harrison, Plaintiffs sought to hold Chief David Hall and Sergeant Dominick Pascale personally liable. Plaintiffs also sued three individual Board members who "coincidentally" belong to the same political party while Plaintiffs chose not to sue the two other Board members who happen to be aligned with a different political party. The complaint was filed just four days before Election Day.

3. In response to the complaint Defendants sought and received permission to file a motion to dismiss and/or a motion for summary judgment, based on, among other things, the fact that Plaintiffs lacked any reasonable expectation of privacy in the front desk area of Police Headquarters.

4. In its June 25, 2008 Memorandum and Order, the Court summarily dismissed all of Plaintiffs' claims. The Court held that as a matter of law, the Plaintiffs had no reasonable expectation of privacy in the reception area of Police Headquarters.

> … Headquarters is open to the public during all hours and at any time a member of the public can enter the reception area. The natural rhythm of life, in which most activity occurs during typical "working hours," does not change the fact that the area is open and accessible to the public at any time. Additionally, plaintiffs' argument fails to account for the fact that officers on duty, during any shift, have open and continuous access to the officer side of the front desk. The fact that the area, at any time, is open to the public and is a common workplace makes any expectation of privacy in this area unreasonable. Finally, the very nature of the work that occurs at the front desk — serving the public in person or by receiving 911 calls — does not support a notion of privacy. There is no genuine issue of material fact as to the layout of and access to the front desk of Headquarters and the nature of the work performed there, and it is on this evidence that we determine that plaintiffs have no reasonable expectation of privacy in that area.

*Tancredi v. Malfitano,* 2008 WL 2885030, * 6 (S.D.N.Y. 2008).

5.  As set forth in the annexed memorandum of law, the Plaintiffs' claims were not only frivolous from a legal standpoint(*i.e.*, Plaintiffs had no reasonable expectation of privacy in the front desk/reception area of Police Headquarters), but the factual averments made against the individual Defendants were false. Specifically, Plaintiffs' had and submitted no evidence whatsoever to back up their assertions. **In fact, Plaintiffs knowingly made false statements to this Court and included such false allegations in the complaint**. There was not a scintilla of evidence provided by the Plaintiffs that support the following allegations:

(a) That Defendants Pascale and Hall surreptitiously altered the Department's 911 communications system. (Complaint ¶ 12).

(b) That Hall and Pascale routinely both recorded and then listened to the private conversations and/or communications of Plaintiffs' and others for unlawful objectives. (Complaint ¶ 13).

(c) That Defendant Chief Hall committed a "felonious forgery of a $2,500 check." (Complaint ¶ 14(iii)).

(d) That the three Republican Board members failed to remedy "systemic criminal wrongdoing," failed to remove Chief Hall from his position after he "engage[ed] in crimes," and did nothing to stop "those crimes." (Complaint ¶¶ 15, 16).

6.  With regard to the allegations that Chief Hall committed a "felonious forgery," annexed hereto as "Exhibit 1" is a copy of a March 28, 2007 letter signed by 10 police officers in the Town of Harrison Police Department suggesting that the Chief of Police, David Hall, was involved in criminal conduct relating to a check alteration. Six of these individuals are Plaintiffs in this matter (Ralph Tancredi, Edward Arce, William Duffelmeyer, Michael Walther, Stephen Carpinello and Peter DeVittorio). This letter was annexed to the complaint filed in the matter entitled *Duffelmeyer et al. v Marshall et al.*, Index No. 07-2807 (GAY). (The matter was initially assigned to Judge Kenneth M. Karas but has since been transferred to Magistrate Judge George A. Yanthis). The law firm of Lovett & Gould represents the Plaintiffs both in the this

action and in the *Duffelmeyer* action and filed the complaint in both matters on behalf of the Plaintiffs.

7.     Annexed hereto as "Exhibit 2" is a copy of a May 30, 2007 affidavit I submitted in the *Duffelmeyer* matter. Part of Exhibit 2 is a May 24, 2007 report issued by the Westchester County District Attorney (Exhibit A) finding that:

> Based upon the thorough investigation conducted by the Office, the serious allegations contained in the two page complaint signed by the members of the Harrison Police Department that Chief Hall was involved in this matter are simply false.

(Exhibit 2 at Exhibit A p. 4). This affidavit along with the attached District Attorney report was electronically filed and thus provided to counsel for the Plaintiffs in *Duffelmeyer*. It therefore demonstrates that counsel and his clients were aware that the allegations they raised against the Chief were determined to be false by the District Attorney. Yet, Plaintiffs and their counsel repeated these same false allegations in this case, some six months later, when they filed the complaint.

8.     Annexed hereto as "Exhibit 3" is an affidavit of Chief David Hall also submitted in the *Duffelmeyer* matter. As the affidavit makes clear, the District Attorney's report was posted in the Department so that any officer, including Plaintiffs, who entered the Department would be aware of the determination. (*See* Exhibit 3 at ¶ 4).

9.     Despite having full knowledge that their allegations that the Chief committed a crime were "false," Plaintiffs and their counsel made the identical allegation in a pleading filed with this Court. (*See* Complaint ¶ 14(iii)).

10.    Defendants also sought permission to file a pre-answer motion to strike regarding the allegations in the complaint including those allegations specified herein at Paragraph 5(c) and (d). At the pre-motion conference held on January 4, 2008 before the Court,

Plaintiff's counsel agreed to strike the allegations that Chief Hall had feloniously forged a $2,500 check.

11. As explained fully in the accompanying memorandum of law, under applicable precedent, Plaintiff and Plaintiffs' counsel should be held responsible for the payment of Defendants' attorneys' fees in this matter.

## PERSONAL BACKGROUND

12. I am a 1980 graduate of Cornell University's School of Industrial and Labor Relations. In 1984, I graduated from the Boston University School of Law and received awards for being in the top quarter of my class. I also received the Am Jur award for Civil Procedure.

13. I am a member in good standing to the bar of New York State Bar, as well as the United States Supreme Court, United States Court of Appeals for the Second Circuit and the Southern, Eastern and Western Districts of New York.

14. In 1984, I joined the law firm of Epstein, Becker & Green, P.C. During my approximately two years at that firm, I worked on numerous civil rights matters, class actions and other employment related issues (*e.g.*, wage and hour issues, employment discrimination issues, etc.).

15. In 1986, I joined the "boutique" labor and employment law firm of Rains & Pogrebin, P.C. In 1993, I became a partner at that firm. The size of Rains & Pogrebin varied during the time I was, there but there were generally between 16 and 23 lawyers in the firm during the time I was employed.

16. At Rains & Pogrebin, I handled all aspects of labor and employment law matters in both the public and private sectors. The civil rights cases I have handled included numerous, race, disability, sex, national origin, religion, and sexual harassment cases. I have also handled

many cases involving claims under 42 U.S.C. §1983 that relate to free speech, constitutional right to privacy, due process, false arrest, etc. My experience with such matters has involved: providing advice to clients; litigating before state and federal administrative agencies; litigating jury and bench trials in state and federal court. I have also litigated non-compete, breach of employment contract, and Article 78 proceedings.

17.    In March 2004, Rains & Pogrebin, P.C., dissolved and I, along with several of my partners and associates joined the law firm of Bond, Schoeneck & King, PLLC. At the time Bond, Schoeneck & King was opening up a Garden City, Long Island office.

18.    BS&K has approximately 180 lawyers in offices throughout New York, and in Florida and Kansas. It is my understanding that it has one of the largest labor and employment law departments in New York State. I am a shareholder in the firm.

19.    At BS&K I practice labor and employment law in both the public and private sectors. My representation includes private employers as well as towns, villages, school districts and other kinds of municipal corporations, on all kinds of civil rights matters.

20.    Since my graduation law school I have worked on hundreds of civil rights cases, dozens of which have been officially reported. In addition to trying cases, I have successfully argued numerous appeals in the United States Court of Appeals for the Second Circuit and in the Appellate Division of New York.

21.    Assisting me on this matter was Jessica Satriano, an associate in the firm. Ms. Satriano is a 2006 *magna cum laude* graduate of Albany Law School, where she was an Associate Editor of the Albany Law Journal of Science and Technology. Ms. Satriano is also the inaugural recipient of the Justice Bernard S. Meyer Scholarship, an award sponsored by the New York Bar Foundation and presented for excellence in legal writing and advocacy skills.

22. Ms. Satriano is a member in good standing to the bar of New York State Bar, as well as the Connecticut State Bar and the United States District Court for the Southern and Eastern Districts of New York.

23. Since her graduation from law school. Ms. Satriano has been an associate with BS&K, and has concentrated her practice on public and private sector labor and employment matters with a focus on federal civil rights litigation.

24. One other associate in our office, Howard Wexler, spent a total of 1.1 hours on this matter. A summer associate, Hilary McHugh, also performed a total of 2.40 hours of work.

25. My hourly rates vary from a low of $185.00 per hour to as high as $325.00 per hour. In this and other matters in which we represent the Town/Village of Harrison, I and the one primary associate involved are billed at a rate of $185.00 per hour.

26. The contemporaneous time records for myself and Ms. Satriano are annexed hereto as "Exhibit 4." My time appears on these records under timekeeper "2135." Ms. Satriano's time appears under timekeeper "8172."

27. As indicated by the time sheets, the bulk of the work was performed by me personally. I worked 86.50 hours on this matter and Ms. Satriano performed 47 hours of work. The time was spent meeting with the various individual in the Department responsible for the Department's 911 communications system. Research into the constitutional and statutory issues (*i.e.*, Omnibus Crime Control Act), was also required and performed. Briefs, letters, and other motion papers were prepared related to the contemplated motion to strike, motion to dismiss and/or motion for summary judgment.

28. Defendants are seeking $25,201 in fees, and $3,994.12 in disbursements.

29. If the motion is granted, we respectfully request the opportunity to supplement this motion by providing the Court with the time records for this fee application.

30. In light of the foregoing, the Defendants' applications for attorneys' fees should be granted.

_____
Mark N. Reinharz

Sworn to before me this
20th day of August, 2008.

_____
Notary Public

Lauren J. Darienzo
Notary Public, State of New York
No. 02DA6176455
Qualified in Nassau County
Commission Expires October 29, 20_11_