UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RALPH TANCREDI, EDWARD ARCE,
WILLIAM C. DUFFELMEYER, ARTHUR
MARINELLI, STEVEN HEISLER, JEFF
NARDI, STEPHEN CARPINIELLO, PETER
DeVITTORIO, MICHAEL MARINELLI and
MICHAEL WALTHER,

                        Plaintiffs,

    - against -

STEPHEN MALFITANO, individually,
JOSEPH CANNELLA, individually,
THOMAS SCAPPATICCI, individually,
DOMINICK PASCALE, individually,
DAVID HALL, individually, and the
TOWN/VILLAGE OF HARRISON, New York,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 07-9617
(WAC) (LMS)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .................................................................................................................................5

    POINT I

        AS PREVAILING PARTIES, DEFENDANTS ARE ENTITLED TO
        ATTORNEYS' FEES ................................................................................................5

        A.   Fee Shifting Standard Pursuant to 42 U.S.C. §1988 ...............................................5

        B.   Fee Shifting Standard Under 28 U.S.C. §1927 .......................................................7

        C.   Defendants Are Entitled to Full Shifting of Fees Under Both 42 U.S.C. §1988
            and 28 U.S.C. §1927 ................................................................................................9

    POINT II

        LEGAL STANDARDS FOR AWARD OF
        REASONABLE ATTORNEYS FEES ..................................................................12

CONCLUSION............................................................................................................................16

61346.1 8/20/2008

## **PRELIMINARY STATEMENT**

On or about November 2, 2007, the Plaintiffs filed the complaint in the above-captioned matter. In the complaint, Plaintiffs alleged violations of their constitutional rights to privacy and their statutory rights under the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §2520. when the Harrison Police Department's 911 communications system recorded their conversations at the front desk of Headquarters regardless of whether there was an emergency 911 telephone call in progress. In addition to suing the Town of Harrison, Plaintiffs sought to hold Chief David Hall and Sergeant Dominick Pascale personally liable. Plaintiffs also sued three individual Board members who "coincidentally" belong to the same political party while Plaintiffs chose not to sue the two other Board members who happen to be aligned with a different political party. The complaint was filed just four days before Election Day.

In response to the complaint, Defendants sought and received permission from this Court to file a motion to dismiss and/or a motion for summary judgment, based on, among other things, the fact that Plaintiffs lacked any reasonable expectation of privacy in the front desk area of Police Headquarters.

In its June 25, 2008 Memorandum and Order, the Court summarily dismissed all of Plaintiffs' claims. The Court held that as a matter of law, the Plaintiffs had no reasonable expectation of privacy in the reception area of Police Headquarters:

> … Headquarters is open to the public during all hours and at any time a member of the public can enter the reception area. The natural rhythm of life, in which most activity occurs during typical "working hours," does not change the fact that the area is open and accessible to the public at any time. Additionally, plaintiffs' argument fails to account for the fact that officers on duty, during any shift, have open and continuous access to the officer side of the front desk. The fact that the area, at any time, is open to the public and is a common workplace makes any expectation of privacy in this area unreasonable. Finally, the very nature of the work that occurs at the front desk — serving the public in person

> or by receiving 911 calls — does not support a notion of privacy. There is no genuine issue of material fact as to the layout of and access to the front desk of Headquarters and the nature of the work performed there, and it is on this evidence that we determine that plaintiffs have no reasonable expectation of privacy in that area.

*Tancredi v. Malfitano,* 2008 WL 2885030, *6 (S.D.N.Y. 2008) (Conner, J.).

Not only was Plaintiffs' legal theory baseless, but the factual allegations asserted in the complaint were simply "over the top." For example, Plaintiffs, through counsel, made the following scurrilous, frivolous and patently false allegations:

- "... Defendants Pascale and Hall surreptitiously altered the Department's 911 communications system as to automatically audio record the voices and/or private conversations of any person at, in front of, and/or behind the front desk area in police headquarters regardless of whether there was an emergency 911 telephone call in progress." (Complaint ¶ 12).

- "... Hall, and ... Pascale routinely both recorded and then listened to the private conversations and/or communications of Plaintiffs and others for unlawful objectives." (Complaint ¶ 13).

- Defendant Chief Hall committed a "felonious forgery of a $2,500 check." (Complaint ¶ 14(iii)).

- The three named Republican Board member Defendants failed to remedy "systemic criminal wrongdoing," failed to remove Chief Hall from his position after he "engage[ed] in crimes," and did nothing to stop "those crimes." (Complaint ¶¶ 15, 16).

Plaintiffs allegations were not even close to being the truth. For example, in response to the Defendants' motion, Plaintiffs offered no evidence whatsoever that the recordings were anything more than a "glitch" or malfunction with a piece of equipment. Plaintiffs also failed to offer any evidence, nor could they since no such evidence exists, that Hall, Pascale or anyone else deliberately "altered" the 911 system. Similarly there is no evidence that any of the conversations supposedly recorded were ever listened to by Hall, Pascale or anyone else. Rather, as the unrefuted affidavits of Chief Hall and Sergeant Pascale indicate, there was an apparent malfunction that was quickly remedied. (*See* January 24, 2008 Affidavit of David Hall ¶¶ 3-5;

January 23, 2008 Affidavit of Dominick Pascale, ¶¶ 20-23). Nonetheless, Plaintiffs made these baseless allegations in another attempt to embarrass the Chief and others knowing full well that their allegations were simply untrue. Counsel also made no attempt to investigate Plaintiffs' claims but rather "ran to the courthouse" in order to file the complaint in time for Election Day.

Moreover, Plaintiffs' allegations of criminal forgery by the Chief was flatly disproved by the fact that Chief Hall was exonerated of any wrongdoing following an investigation by the Westchester County District Attorneys Office. The District Attorney, however, not only completely exonerated the Chief, but concluded that Plaintiffs' charges against him "were false." (*See* Reinharz Aff. Exhibit 2). Both Plaintiffs and their counsel were well aware of this fact months prior to filing the complaint herein (*see* Reinharz Aff. ¶ 7; ECF Docket No. 9 in *Duffelmeyer, et al. v. Marshall, Hall, and the Town/Village of Harrison*, Index No. 07-2807 (GAY), yet deliberately chose to repeat these falsehoods in an attempt to smear the Chief's good name and others in the Department. (*See* Reinharz Aff. ¶ 7). Significantly, Plaintiffs counsel made false criminal allegation against the Chief of Police despite having been provided a report months earlier indicating that the charges were false. The fact that Plaintiff agreed to withdraw this assertion (after being advised of a contemplated motion to strike) at the commencement of the litigation demonstrated the infirmity of the claims. (Reinharz Aff. ¶ 10).

With regard to the claims brought individually against the three Republican Board members, the unrefuted affidavits of these individuals previously submitted demonstrate that they knew nothing about the 911 malfunction and had absolutely nothing to do with it. (*See* January 24, 2008 Affidavit of Stephen Malfitano; January 24, 2008 Affidavit of Joseph Cannella; and January 24, 2008 Affidavit of Thomas Scappaticci). Again, the allegations Plaintiffs made against them were completely baseless and were clearly made up in an attempt to embarrass

individuals of one particular political party. Any reasonable investigation by Plaintiffs and their counsel would have led them to conclude that Plaintiffs' claims lacked any foundation whatsoever.

In light of the reckless and totally false statements made by Plaintiffs and their counsel, Defendants are entitled to attorneys' fees.

**ARGUMENT**

**POINT I**

**AS PREVAILING PARTIES, DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES**

A.  **Fee Shifting Standard Pursuant To 42 U.S.C. § 1988**

It is well established that a defendant is entitled to a recovery of attorneys' fees in civil rights cases pursuant to 42 U.S.C. § 1988 where the underlying claim was frivolous, groundless, meritless or vexatious.  *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *American Federation of State, County & Municipal Employees, AFL-CIO (AFSCME) v. County of Nassau*, 96 F.3d 644, 650-51 (2d Cir. 1996), *cert. denied*, 520 U.S. 1104 (1997).

In *Christianburg Garment Co. v. EEOC*, the United States Supreme Court held that a plaintiff should "be assessed his opponent's attorney's fees [where] a court finds that his claim was frivolous, unreasonable, or groundless, or that the Plaintiff continued to litigate after it clearly became so." 434 U.S. at 422. To be frivolous, the plaintiff's action must be "meritless in the sense that it is groundless or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). This determination "is not a purely factual inquiry," as the court must make "an evaluation of the allegations and the proof in light of the controlling principles of substantive law." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998); *Faraci v. Hickey-Freeman Co, Inc.*, 607 F.2d 1025 (2d Cir. 1979).

The Second Circuit has defined "frivolous" conduct as follows:

> We have indicated in particular cases what is meant by "frivolous, unreasonable, or without foundation." In *GerenaValentin v. Koch*, 739 F.2d 755, 756-57 (2d Cir. 1984), the plaintiff claimed that two municipal employees conspired to keep him off the ballot in an election for New York City councilman, in violation of the Voting Rights Act, 42 U.S.C. § 1973 et seq. .... [W]e approved a fee award to the prevailing defendants because the plaintiff had already

>litigated the issue (unsuccessfully) in state court, *and because "at no time ... did [the plaintiff] attempt to produce any evidence whatsoever in support of his retaliation and conspiracy claim." Id.* at 761. In *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 246 (2d Cir. 1985), a general contractor charged the City of New York and others with violating the antitrust and civil rights laws by prohibiting it from contracting with other companies "engaged in City-financed reconstruction projects." ... [W]e approved a fee award to the defendant because the plaintiff "could not point to a deprivation of any single right conferred by federal law or the ... Constitution," and had unsuccessfully challenged the City's action in state court. *Id.* at 252. And in *Faraci v. Hickey-Freeman* Co., 607 F.2d 1025, 1027-29 (2d Cir. 1979), we approved a fee award against a Title VII plaintiff where the evidence of non-discrimination was "uncontradicted."

*American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME)*, 96 F.3d at 650-51 (emphasis added).

In addition, fees may be awarded pursuant to 42 U.S.C. § 1988 to a prevailing defendant when the claims are brought for the purpose of harassing the defendant:

>If a plaintiff brings a lawsuit for a vexatious purpose or in bad faith, *i.e.*, not in the hope of winning but solely in order to put the defendant to the burden of defending himself, the prevailing defendant arguably is entitled to attorneys' fees regardless of whether the plaintiff's claims technically were frivolous.

*Poppham v. City of Kenneshaw*, 820 F.2d 1570, 1583 (11th Cir. 1987) (internal citations omitted). "An action is 'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002) (internal citation omitted). This Court has recognized that a defendant may recover attorney's fees where the suit was vexatious, frivolous or brought for the purpose of embarrassing the defendant. *Neider v. Comblo*, 917 F. Supp. 2d 262, 263 (S.D.N.Y. 1996) (Conner, J.).

B.  **Fee Shifting Standard Under 28 U.S.C. § 1927**

In addition to attorneys' fees under 42 U.S.C. § 1988, Defendants herein are entitled to full fee shifting under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

*Id.*; *see 60 E. 80th St. Equities, Inc. v. Sapir*, 218 F.3d 109, 115 (2d Cir. 2000) (holding "an award under 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose"); *Chalfy v. Turoff*, 804 F.2d 20, 23 (2d Cir. 1985) (imposing sanctions under 28 U.S.C. § 1927 for filing a frivolous appeal because "[t]he appellants' brief shows that they did not attempt seriously to weigh the merits of their various claims under section 1983 or the United States Constitution. The brief fails to discuss controlling precedent, cites decisions that were overturned on appeal, and mischaracterizes even their own affidavit.").

Courts have held that an award of attorneys' fees is warranted under § 1927 where, as here, an attorney knowingly pursues litigation after being informed that such litigation was frivolous or otherwise legally barred. *See, e.g., Hudson Motors v. Crest Leasing*, 845 F. Supp. 969, 982-83 (E.D.N.Y. 1994) (sanctioning attorney under § 1927 for filing counterclaim he should have reasonably known was legally baseless); *Steinle v. Warren*, 765 F.2d 95, 101 (7th Cir. 1985) (affirming award under § 1927 because attorney litigated "claims [that] were frivolous, without merit, and brought in bad faith" when he knew they were time barred).

In *Baasch v. Reyer*, for example, the district court awarded attorney's fees to a defendant where the plaintiff, acting *pro se*, refused to withdraw a claim that was "frivolous from the

outset." 846 F. Supp. 9, 11 (E.D.N.Y. 1994) (awarding fees under 42 U.S.C. § 1988 and imposing sanctions on a pro se litigant under Rule 11 because 28 U.S.C. § 1927 applies only to attorneys). The court reasoned that the plaintiff pursued his claim in bad faith, since, "even after defendants repeatedly requested that [the plaintiff] discontinue [his] baseless action, pointing out to him that his position was untenable, he refused to do so." *Id*. Because the defendants were "forced to expend a considerable sum of money to defend a case that should never have been brought in the first instance," the court was "sympathetic" and awarded the defendant attorneys' fees. *Id*. The case for fee shifting here is even more compelling than in *Baasch* since the fee shift is sought against an experienced attorney. *See Boykin v. Bloomsburg Univ.*, 905 F. Supp. 1335, 1338, 1340-41 (M.D. Pa. 1995), *aff'd*, 91 F.3d 133, *cert denied* 519 U.S. 1078 (1995) (charging $52,980.47 in fees under 28 U.S.C. § 1927 where attorney acted in bad faith by continuing to litigate inadequately alleged claims after being informed such claims were time barred).

When an attorney disregards clearly established legal precedent, as Plaintiff's counsel has done in this case, the attorney "so multiplies the proceedings ... unreasonably and vexatiously," thereby permitting a court to personally charge that attorney with his/her adversary's fees. 28 U.S.C. § 1927; *see, e.g., Pentagen Tech. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2001) (awarding fees under § 1927 for "engag[ing] in a pattern of litigation designed to evade previous rulings"). As one Circuit Court of Appeals aptly stated, when "a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *In re T.C.I. Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). Thus, where a plaintiff pursues litigation in clear disregard of unambiguous case law to the contrary, the claim is innately frivolous and results in the

unreasonable and vexatious multiplication of proceedings prohibited by Section 1927. *See Hastings v. Maine-Endwell Cent. Sch. Dist.*, 676 F.2d 893, 897-98 (2d Cir. 1982) (pointing out Section 1927's allowance of sanctions against attorneys stating, "[w]e are at a loss to explain such blatantly baseless arguments except to conclude that they have been interposed for the purposes of harassment and delay.").

### C. Defendants Are Entitled To Full Shifting Of Fees Under Both 42 U.S.C. § 1988 And 28 U.S.C. § 1927

In response to Defendant's motion, Plaintiffs offered absolutely no evidence to support their allegations. They brazenly asserted that they had a right to privacy in the front desk/reception area of Headquarters despite overwhelming precedent to the contrary, and cited no cases that supported their legal theory. Indeed, in *Williams v. City of Tulsa, Oklahoma*, the only case cited by Plaintiffs purportedly in support of their privacy claims, the court specifically noted that "[c]ourts distinguish cases of an employer's expectation of privacy in his own office from an employee's expectation of privacy in other areas of the work place." 393 F. Supp. 2d 1124, 1129 (N.D. Okla. 2005). Plaintiff's simply did not and could not have had any reasonable expectation of privacy in the reception area of the police station, a fact which was previously established by precedent and confirmed by this Court.

Moreover, as a way of intimidating Defendants, Plaintiffs sought to bring this case as a purported "class action." It is hard to comprehend how an experienced practitioner such as Plaintiffs' counsel could have conceived that people walking into an open police station to ask directions, speak to a police officer, etc., could harbor the slightest degree of privacy expectation.

Rather, the class action label was inserted as an obvious attempt to "scare" the Defendants and perhaps "knuckle under" to yet another frivolous lawsuit brought by the Plaintiffs.[1]

But the legal deficiency of Plaintiffs' complaint is overshadowed by their patently false factual averments. Plaintiffs' knowingly and falsely asserted that the Chief of Police was responsible for felonious check alteration, even though the District Attorney found their allegation was untrue long before this lawsuit was commenced. Despite being provided with copies of the District Attorney's comprehensive report months earlier, Plaintiffs' through counsel had the audacity to continue make these accusations in the instant complaint knowing full well that they were false. No mention of the report was ever made by counsel for the Plaintiffs to this Court. Accusing the Chief of Police of a crime is a serious mater. Making such an allegation in a federal court pleading signed by counsel *after* it had been investigated and shown to be false is nothing short of outrageous. The inclusion of this false allegation — an allegation that has absolutely nothing to do with alleged recordings of a 911 communications system — is further evidence that the Plaintiffs and their counsel brought this case for the purpose of harassing and embarrassing the Chief.

The accusations against the three individual Board members were likewise unfounded and frivolous. Not a shred of evidence was ever presented which demonstrated that those

---

[1] Plaintiffs and counsel have filed numerous complaints against the Town/Village of Harrison and numerous individual Defendants. For example, in *Tancredi v. Hall, et al., Index No,: 07 Civ. 7485 (WCC)*, the Plaintiff, a police officer in the Department, alleged that he was subject to an unconstitutional seizure and arrest by the Town. Defendants moved to dismiss the complaint in December 2007 and provided numerous affidavits attesting to the fact that there was probable cause to arrest the Plaintiff. In response, in January 2008, Plaintiff voluntarily withdrew his complaint. In *DeVittorio v. Malfitano, et al., Index No. 07-11353 (WCC)*, the plaintiff filed a complaint in or about December 2007 claiming that he was not promoted to the rank of Lieutenant because of what he claims was his prior constitutionally protected activity. Defendants sought dismissal of the complaint on the ground that Plaintiff could not make a prima facie case of discrimination because no one had filled the position he sought and the Town is not looking to fill the Lieutenant position. At a pre-motion conference, the Court recognized the weakness of this case and elected to put this matter on the "suspense calendar." A February 29, 2008 "Suspense Order" was issued. If the Town does not fill the Lieutenant position within one year, the case will be formally dismissed. These cases further demonstrate that Plaintiffs and counsel will file any claims against the Defendants no matter how frivolous or baseless.

individuals were involved in the alleged "alteration" of the 911 system. Indeed, these individuals did not know about the malfunction until after the litigation was commenced!

Plaintiffs' claims about altering the equipment and listening to conversations are also egregious. Where did Plaintiffs get their facts? Was it simply a publicity stunt? What evidence do Plaintiffs have that Hall and Pascale listened to these conversations? Plaintiffs' failed to present any evidence whatsoever to answer these questions. Simply putting such an accusation in a pleading does not make it true. In short, there is no evidence here, just Plaintiff's baseless accusations.

Plaintiffs never offered any evidence that any of the defendants did anything illegal in this case. Rather they simply ran off to court claiming constitutional violations and maintained that they were appropriate representatives for a purported class action. Their demonstrated conduct in this case is reprehensible. Plaintiffs and their counsel must be held accountable. *See, e.g., Niederhoffer v. Gilchrist,* 1998 U.S. App. LEXIS 27985 (2d Cir. 1998) (affirming district court's award of attorneys' fees to defendant where Plaintiff's action "was nothing more than a personal vendetta" and Plaintiff failed to produce any evidence whatsoever to support his allegations); *Davis v. Yellow Freight Systems, Inc.,* 2005 WL 1388889 (N.D.N.Y. 2005) (Defendant in Title VII entitled to attorneys' fees based on Plaintiff's lack of proof of discrimination); *Evans v. PATH,* 2003 WL 19923290, *3 (S.D.N.Y. 2003) (awarding defendant $40,000 of fees incurred for defending against claims that were "doomed at the outset"); *see also Santa Fe Ranchlands v. Santa Fe County,* 1995 WL 41663, *1-2 (10th Cir. 1995) (affirming award of $39,000 in attorneys' fees to defendants where "plaintiffs and their attorneys disregarded … precedent when they filed suit").

In short Plaintiffs and their counsel have engaged in tactics that would make former Senator Joseph McCarthy proud. Baseless and unfounded accusations were recklessly hurled by Plaintiffs. Now that their accusations have been shown to be not only untrue but false, Plaintiffs should not be permitted to simply fold their tents and go home. The costs associated with the defense of these claims should be shouldered by Plaintiffs' and their counsel.

Finally, and perhaps most importantly, personally charging Plaintiffs' counsel with Defendants' attorneys' fees and costs under Section 1927 would promote the underlying goals of that statute. Section 1927 "is specifically designed to deter bad-faith conduct by any attorney," so to "limit[] the abuse of the court processes." *Herrera v. Scully*, 143 F.R.D. 545, 552 (S.D.N.Y. 1992); *accord Roadway Express v. Piper*, 447 U.S. 752, 762 (1980). Counsel's obligation of good faith carries through "all phases" of this litigation, up to and including the good faith withdrawal of an obviously frivolous claim. *Herrera*, 143 F.R.D. at 552; *Thomas v. Capital Sec. Serv. Inc.*, 836 F.2d 866, 875 (5th Cir. 1988). By forcing Defendants to expend considerable time and money to defend against Plaintiffs' baseless claims, counsel has engaged in the very "advocacy designed to burden an opponent" that Section 1927 seeks to prevent. *Matter of Capital-York Constr. Corp.*, 52 B.R. 317, 321 (Bankr. Ct. S.D.N.Y. 1985). "Unless attorneys learn from experience, § 1927 will not achieve its purpose." *In re T.C.I.*, 769 F.2d at 450.

## POINT II

### LEGAL STANDARDS FOR AWARD OF
### REASONABLE ATTORNEYS' FEES

Once this Court determines that the Defendants are entitled to attorneys' fees, the question becomes the calculation of the fees awarded. In assessing requests for attorneys' fees, courts utilize the so called "lodestar" analysis. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115

(2d Cir. 1997). Under this analysis, the court calculates fees on the basis of the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckert*, 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar represents the "reasonable fee" to be awarded. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); *Luciano*, 109 F.3d at 116. Although the court may, in its discretion, do so, "any departure from the lodestar must state specific reasons for doing so." *Forschner Group, Inc. v. Arrow Trading Co, Inc.*, 1998 WL 879710, *2 (S.D.N.Y. 1998).

The court is to begin the assessment by looking at the attorneys' documented records in order to determine the appropriate number of hours. *Santa Fe Natural Tobacco Co., Inc. v Spitzer*, 2002 WL 498631, *3 (S.D.N.Y. 2002); *Forschner Group, Inc.*, 1998 WL 879710 at *2. As part of that inquiry, the court may consider what is called billing or business judgment, which is an analysis of whether the time spent is excessive, duplicative, or wasteful. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Santa Fe,* 2002 WL 498631 at *3; *Raniola v. Bratton*, 2003 WL 1907865, *3-4 (S.D.N.Y. 2003). Also to be considered is the court's "own familiarity with the case and its experience generally." *Santa Fe Natural Tobacco Co., Inc. v Spitzer*, 2002 WL 498631 at *3.

In assessing a fee application, the court is given broad discretion to evaluate the attorneys' performance and handling of the matter in general, and is not tied to the tedious task of analyzing every aspect of the representation. *Hensley v. Eckerhart, supra* at 437 (1983); *Santa Fe,* 2002 WL 498631 at *2. Although some entries may be vague or general on their face, the court is not confined to examining each entry in isolation or in a vacuum, and may instead view them in the context in which the entries occur. *Raniola*, 2003 WL 1907865 at *4; *Tran v. Tran*, 166 F. Supp. 2d 793, 800 (S.D.N.Y. 2001). It is with this contextual approach in mind that

the court can determine whether the attorneys "were wasting significant amounts of time or otherwise performing with less than reasonable efficiency." *Raniola*, 2003 WL 1907865 at *4; *Algie v. RCA Global Communications, Inc.*, 891 F. Supp. 875, 894 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 95 (2d Cir. 1995).

The Affidavit of Mark N. Reinharz submitted in support of the Defendants' Motion for Attorneys' Fees ("Affidavit"), and incorporated herein by reference, includes the information necessary for this Court to establish a reasonable number of hours expended by all attorneys on behalf of the Defendants. First of all, it is clear that all of the hours are fully documented: each entry is listed separately, identifies the attorney, the task(s) performed, and the time spend. These contemporaneous records constitute a prudent portrayal of the time spent and what it was spent on.

Moreover, and importantly, the Affidavit demonstrates that Mr. Reinharz has engaged in prudent management of the case from its inception. Rather than have numerous attorneys handle the matter at one time, or duplication among several, one associate attorney was primarily assigned to work under Mr. Reinharz's supervision. (*See* Reinharz Aff. ¶¶ 1, 21, 24, 27). In fact, approximately 2/3 of the time spent on this matter was done by Mr. Reinharz alone, and essentially involved putting together briefs and affidavits in support of Defendants' motion for summary judgment. (*See* Reinharz Aff. ¶ 27).

Once the hours are determined, the court's next step is to determine the appropriate hourly rate for the attorney(s) involved. To assess the reasonableness of the attorney's billing rate, courts look to market rates prevailing in the community for similar services rendered by lawyers of similar experience and reputation. *Luciano*, 109 F.3d at 115; *Schrefer v. Winthrope Grant Inc.*, 2003 WL 21511157, *3 (S.D.N.Y. 2003); *Ranola*, 2003 WL 1907865 at *6. For

14

purposes of this determination, the community is the district in which the court sits. *See, e.g., Schrefer*, 2003 WL 21511157 at *3; *Santa Fe*, 2002 WL 498631 at *3-4; *Polk v. New York State Dep't of Correctional Services*, 722 F.2d 23, 25 (2d Cir 1983). The court may also rely on its own knowledge of rates charged by lawyers in the district. *Miele v. New York State Teamsters Conf. Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987); *Santa Fe*, 498631 at *3; *Schrefer*, 21511157 at *3.

Over the years, the courts in the Southern District have approved rates far beyond the rate sought here. *Se, e.g., Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 211-12 (S.D.N.Y. 2001) (approving $390 to a partner in a small firm); *Helbrans v. Coombe*, 890 F. Supp. 227, 234 (S.D.N.Y. 1995) (approving $350 to solo practitioner thirteen years ago); *Wahad v. Coughlin*, 870 F. Supp. 506 (S.D.N.Y. 1994) ($350 awarded to solo practitioner 14 years ago); *M.L ex rel. M.P. v. Board of Ed.*, 2003 WL 1057476 at *3 (S.D.N.Y. 2003) (approving $350 rate). For example in *Schrefer*, a 2003 case, the court reviewed the decision in the Southern District and concluded that a rate of $350 per hour was reasonable. 2003 WL 21511157 at *3. In *Raniola*, another 2003 case, the court approved rates of $400, $350 and $300 for the attorneys, determining such were reasonable rates. 2003 WL 1907865, *6.

Here, Mr. Reinharz is a 1984 graduate of Boston University School of Law, and a practitioner in this area of law for nearly 25 years. (Reinharz Aff. ¶¶ 12-20). Jessica Satriano, who is the primary attorney to have assisted Mr. Reinharz on this case, is a 2006 *magna cum laude* graduate of Albany Law School, and has practiced in this area of law since her graduation. (Reinharz Aff. ¶¶ 21-23). The rates charged herein are clearly reasonable. *See Raniola*, 2003 WL 1907865 at *6 (approving $300-$400 rate for experienced attorneys, and $225-$200 for junior attorneys with two or less years of experience).

## CONCLUSION

For all of the foregoing reasons, Defendants' motion for attorneys' fees should be granted in its entirety. Plaintiffs should be assessed fees under 42 U.S.C. § 1988 and counsel should be liable under 28 U.S.C. § 1927. The Court should also award any other relief deemed appropriate under the circumstances.

Dated: August 20, 2008  
       Garden City, New York

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: _____  
    Mark N. Reinharz (6201)  
    Attorneys for Defendants  
    1399 Franklin Avenue, Suite 200  
    Garden City, New York 11530  
    (516) 267-6320

Of Counsel: Jessica C. Satriano

CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

    LOVETT & GOULD, LLP
    222 Bloomingdale Road
    White Plains, New York 10605

                                                  Mark N. Reinharz (6201)
                                                  BOND, SCHOENECK & KING, PLLC
                                                  *Attorneys for Defendants*
                                                  1399 Franklin Avenue, Suite 200
                                                  Garden City, New York 11530
                                                  (516) 267-6320
                                                  mreinharz@bsk.com